SIMONSEN, Appellant, v. BARTH, Executrix, et al.. Respondents.

(No. 4,751.)

(Submitted April 21, 1922. Decided July 3, 1922.)

[208 Pac. 938.]

*Contracts—Third Party Wrongfully Inducing Breach—Liability for Damages—Complaint—Sufficiency—Public Officers— Privileged Communications—Waiver—Evidence.*

Complaint—Sufficiency—Rule.
  1. If upon the facts stated in the complaint, from any point of view, the plaintiff is entitled to relief, the complaint will be sustained as against a demurrer for insufficiency.
Actions—Motive Immaterial.
  2. One possessing a right may enforce it by appropriate action notwithstanding his motive may be evil.
Same—Unknown at Common Law—Authority to be Found in Statutes.
  3. Where a right sought to be asserted was not known to the common law at the time it became part of the jurisprudence of the state, authority for the right must be found in the Acts of the legislature.
Contracts—Breach Induced by Third Party—Liability for Damages.
  4. Where a stranger to a contract without justification induces a party thereto to break it, he is responsible in damages to the other party to it.
Same—Case at Bar.
  5. *Held*, under the above rule (par. 4) that a complaint alleging that defendant had filed false charges with the commissioner of Indian affairs against plaintiff to the effect that the latter had violated the provisions of his grazing contract with a tribe of Indians, with the result that the commissioner canceled his leases, to his damage, *etc.*, stated a cause of action, and that therefore the court erred in sustaining a demurrer to it.
Same—Wrongfully Inducing Public Officer to Cancel Contract—Damages Recoverable.
  6. An action of the nature of the above lies though the party wrongfully prevailed upon to break the contract was a public official, the extent of the inquiry in such a case, however, being limited to the question whether defendant's acts affected the determination of the officer in canceling the contract.
Evidence—Public Records—Admissibility.
  7. Courts have power to have public records produced, except where it is contrary to public interest for their contents to be made public.

4. Right of action for damages for inducing breach of contract, see notes in 97 Am. St. Rep. 923; 2 Ann. Cas. 441; 8 Ann. Cas. 889; 11 Ann. Cas. 337; Ann. Cas. 1912B, 1162; Ann. Cas. 1916E, 608; 16 L. R. A. (n. s.) 746; 28 L. R. A. (n. s.) 615.

Same—Public Officers—Privileged Communications—Waiver.
8. Where public interests will not suffer, a public officer may waive the privilege of refusing to divulge communications addressed to him in his official capacity.

Same—Illegality of Method of Obtaining Immaterial.
9. The illegality of the method by which evidence has been obtained does not affect its admissibility.

Contracts—Law Applies to Federal Government.
10. The law of contracts is the same when applied to those of the federal government as when applied to those of individuals.

*Appeal from District Court, Yellowstone County; Charles A. Taylor, Judge.*

Action by Lee Simonsen against Anna Barth and another, as executors of the estate of A. H. Barth, deceased. From the judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed and remanded, with directions to overrule the demurrer.

*Mr. E. E. Enterline, Messrs. Brown & Tilton* and *Mr. Mathoniah Thomas,* for Appellant, submitted a brief; *Mr. Enterline* argued the cause orally.

The allegations set forth in the amended complaint state facts sufficient to constitute a cause of action. (*Lumley* v. *Gye,* 2 El. & Bl. 216, 75 Ecl. 216, 1 Eng. Rul. Cas. 706; 15 R. C. L., "Interference," secs. 13, 14, 16, 24; 2 Elliott on Contracts, sec. 1410; 3 *Id.,* secs. 2685, 2687, 2689, 2692; *Martens* v. *Reilly,* 109 Wis. 464, 84 N. W. 841; *Cumberland Glass Mfg. Co.* v. *De Witt,* 120 Md. 381, Ann. Cas. 1915A, 702, 87 Atl. 927; *Heath* v. *American Book Co.,* 97 Fed. 533; *Angle* v. *Chicago, St. P., M. & O. Ry. Co.,* 151 U. S. 1, 38 L. Ed. 55, 14 Sup. Ct. Rep. 240 [see, also, Rose's U. S. Notes].)

*Messrs. Burkheimer & Burkheimer* and *Messrs. Gunn, Rasch & Hall,* for Respondents, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

It is elementary law that a cause of action cannot be predicated upon the acts of a party in persuading another to do

[64 Mont. 95.]

what he may rightfully do. Unless, therefore, it can be shown that the commissioner of Indian affairs wrongfully terminated these contracts, the fact that he was induced to do so by the defendant does not make the defendant liable. (*McGuire* v. *Gerstley,* 204 U. S. 489, 51 L. Ed. 581, 27 Sup. Ct. Rep. 332.)

While it is alleged in the complaint that the commissioner of Indian affairs wrongfully canceled the leases by reason of the acts of the defendant complained of, this allegation is not capable of proof; and, consequently, a cause of action is not stated. The allegation cannot be proven because:

1. The cancellation of said leases involved judgment and discretion on the part of the commissioner; and, as he is an officer of the executive department of the government, the courts cannot review his decision or make any inquiry into the reasons or motives which induced him to act. (*United States* v. *Birdsall,* 233 U. S. 223, 58 L. Ed. 930, 34 Sup. Ct. Rep. 512; *United States* v. *Hitchcock,* 205 U. S. 80, 51 L. Ed. 718, 27 Sup. Ct. Rep. 423.) The Indian department is a branch of the executive department of the government. The action of the commissioner of Indian affairs is in effect the action of the President. (*Wolsey* v. *Chapman,* 101 U. S. 755, 25 L. Ed. 915, see, also, *Wilcox* v. *Jackson,* 13 Pet. 498, 10 L. Ed. 264; *Marbury* v. *Madison,* 1 Cranch, 137, 2 L. Ed. 60; *Wright* v. *Defrees,* 8 Ind. 298; *Maynard* v. *Hill,* 125 U. S. 190, 31 L. Ed. 654, 8 Sup. Ct. Rep. 123; *Leahy* v. *Indian Territory Illuminating Co.,* 39 Okl. 312, 135 Pac. 416.) We therefore submit that the decision of the commissioner of Indian affairs to cancel these leases stands as a barrier against any inquiry into the reasons which induced such decision.

2. It will be presumed that the commissioner of Indian affairs acted rightfully in canceling said leases, and this presumption is conclusive upon the courts. (*United States* v. *Peralta,* 18 How. 343, 15 L. Ed. 678; *Angle* v. *Chicago etc. Ry. Co.,* 151 U. S. 1, 38 L. Ed. 55, 14 Sup. Ct. Rep. 240; *Farmers' Loan & Trust Co.* v. *Chicago etc. Ry. Co.,* 39 Fed. 143.)

3. Any representations or statements made to the commissioner of Indian affairs in his official capacity are privileged and cannot be shown in court. (*Worthington* v. *Scribner,* 109 Mass. 487, 12 Am. Rep. 736; *Vogel* v. *Gruaz,* 110 U. S. 311, 28 L. Ed. 158, 4 Sup. Ct. Rep. 12; *In re Quarles,* 158 U. S. 532, 39 L. Ed. 1080, 15 Sup. Ct. Rep. 959 [see, also, Rose's U. S. Notes].)

4. To persuade or induce a sovereign power to commit a wrong does not constitute a tort. (*American Banana Co.* v. *United States Fruit Co.,* 213 U. S. 345, 16 Ann. Cas. 1047, 53 L. Ed. 826, 29 Sup. Ct. Rep. 511 [see, also, Rose's U. S. Notes].)

Again, let us assume, for the sake of argument, that the commissioner of Indian affairs had no authority to cancel the contracts. If this assumption is correct, the contracts were never canceled and the plaintiff has no one to blame but himself for having removed his stock from the reservation and surrendered possession of the leased land. If the commissioner of Indian affairs had no authority to cancel the contracts, any interference by him with the possession of the plaintiff of the leased land could have been prevented by injunction. (*Noble* v. *Union River Logging R. Co.,* 147 U. S. 165, 37 L. Ed. 123, 13 Sup. Ct. Rep. 271 [see, also, Rose's U. S. Notes]; *La Chapelle* v. *Bubb,* 69 Fed. 481; *Kirwan* v. *Murphy,* 83 Fed. 275, 28 C. C. A. 348; *Hoover* v. *McChesney,* 81 Fed. 472; *Caldwell* v. *Robinson,* 59 Fed. 653.)

MR. CHIEF COMMISSIONER POMEROY prepared the opinion for the court.

This appeal is from a judgment for the defendants' testator, following the sustaining of a demurrer to the amended complaint, the plaintiff having declined to further plead.

It appears from the amended complaint that the plaintiff was the lessee in two sheep-grazing leases for 483,928 acres of lands on the Crow Indian Reservation, for the term of five years from February 1, 1916, executed in behalf of the Crow Tribe of Indians by the superintendent of the Crow Indian

school and approved by the secretary of the interior. It is alleged that the plaintiff fully performed the covenants of the leases imposed upon him and paid all rentals provided for therein. It appears that the leases were canceled by the commissioner of Indian affairs October 19, 1916, to take effect February 1, 1917, prior to which time plaintiff was required to remove from the lands the sheep, some 55,000 head, which he was grazing thereon. Plaintiff alleges that the sheep were removed as required, and that by the cancellation of the leases he was substantially damaged. It fairly appears from the amended complaint that the action of the commissioner was due to false charges against the plaintiff by the defendants' testator, and by members of the Crow Tribe, through his influence, as to the manner in which plaintiff was operating under the leases, and particularly the charge that he was greatly overstocking the range.

As said by Mr. Chief Justice Brantly, speaking for this [1] court, in the case of *Hicks* v. *Rupp,* 49 Mont. 40, 140 Pac. 97: ''The rule is well established in this jurisdiction, both by the statute and the numerous decisions of this court, that, if upon the facts stated, from any point of view, the plaintiff is entitled to relief, the complaint will be sustained.'' (See, also, *Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714; *Decker* v. *Decker,* 56 Mont. 338, 185 Pac. 168; *Wing* v. *Brasher,* 59 Mont. 10, 194 Pac. 1106; sec. 9316, Rev. Codes 1921.)

The allegations of the amended complaint as to the motives [2] which actuated the defendants' testator in his conduct may be disregarded. ''One possessing a right may enforce it notwithstanding his motive may be evil.'' (*MacGinniss* v. *Boston & M. Consol. Copper & Silver Min. Co.,* 29 Mont. 428, 75 Pac. 89; see, also, *Bordeaux* v. *Greene,* 22 Mont. 254, 74 Am. St. Rep. 600, 56 Pac. 218.)

The question to be determined is whether an action for [3, 4] damages can be maintained against a party who induces another to cancel his contract, other than a contract for personal service. No such right was known to the common

law of this country at the time it became a part of our jurisprudence, January 11, 1865, and hence the authority for the right, if it exists, must be found in the Acts of the legislature. (Bannack Statutes, p. 356; secs. 5672, 10703, Rev. Codes 1921; *Aetna Accident & Liability Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760; *Jonosky* v. *Northern Pac. Ry. Co.,* 57 Mont. 63, 187 Pac. 1014; *State ex rel. Metcalf* v. *District Court,* 52 Mont. 46, Ann. Cas. 1918A, 985, L. R. A. 1916F, 132, 155 Pac. 278.)

"Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." (Sec. 7573, Rev. Codes 1921.)

"Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." (*Id.,* sec. 8659.)

"For every wrong there is a remedy." (*Id.,* sec. 8752.) Section 7579 provides that everyone is responsible for his willful acts.

In the case of *Chesnut* v. *Sales,* 49 Mont. 318, Ann. Cas. 1916A, 620, 52 L. R. A. (n. s.) 1199, 141 Pac. 986, this court said: "It is not the theory of our Code that substantial damage suffered by one through the fault of another shall be unredressed, but that in all such cases the damaged party shall have full compensation."

The leases with the Crow Tribe were plaintiff's property. [5] If the defendants' testator, wholly without justification, as appears from the amended complaint, caused the cancellation of the leases, under the circumstances alleged, he as effectually injured the property of plaintiff and infringed upon his rights as if he had robbed him of a large number of the sheep he was grazing on the lands. Our conclusion is that where a party, not in the exercise of a right reposing in him, induces another to break his contract, by any means whatever, he is responsible in damages to the other party to the contract.

The California Code (Civ. Code, sec. 1708) adopted in 1872, contains a provision identical with our section 7573. On June 12, 1893, prior to the adoption of our Code, in the case of *Boyson* v. *Thorn,* 98 Cal. 578, 21 L. R. A. 233, 33 Pac. 492, the supreme court of that state held that the action could not be maintained. Since the Code provision is not mentioned in the decision, we do not feel bound to follow it as being a construction of the provision adopted by our legislature when it adopted the Code containing the provision.

While the ground for the conclusion reached in the case of *Peek* v. *Northern Pac. Ry. Co.,* 51 Mont. 295, L. R. A. 1916B, 835, 152 Pac. 421, is not stated, the doctrine of that case cannot be distinguished on principle from this. (See, also, *Palmer* v. *Israel,* 13 Mont. 209, 33 Pac. 134.)

The weight of modern authority seems to be that an action such as this can be maintained. (*Wheeler-Stenzel Co.* v. *American Window Glass* Co., 202 Mass. 471, L. R. A. 1915F, 1026, 89 N. E. 28; *Cumberland Glass Mfg. Co.* v. *De Witt,* 120 Md. 381, Ann. Cas. 1915A, 702, 87 Atl. 927; *London Guarantee Co.* v. *Horn,* 206 Ill. 493, 99 Am. St. Rep. 185, 69 N. E. 526; *Raymond* v. *Yarrington,* 96 Tex. 443, 97 Am. St. Rep. 914, 62 L. R. A. 962, 72 S. W. 580, 73 S. W. 800; *Kock* v. *Burgess,* 167 Iowa, 727, 149 N. W. 858; *Faunce* v. *Searles,* 122 Minn. 343, 142 N. W. 816; *Chipley* v. *Atkinson,* 23 Fla. 206, 11 Am. St. Rep. 367, 1 South. 934; *Raycroft* v. *Tayntor,* 68 Vt. 219, 54 Am. St. Rep. 882, 33 L. R. A. 225, 35 Atl. 53; *Schonwald* v. *Ragains,* 32 Okl. 223, 39 L. R. A. (n. s.) 854, 122 Pac. 203; *Angle* v. *Chicago, St. P. etc. Ry.,* 151 U. S. 1, 38 L. Ed. 55, 14 Sup. Ct. Rep. 240; *American Malting Co.* v. *Keitel,* 209 Fed. 351, 126 C. C. A. 277; *Filler* v. *Joseph Schlitz Brewing Co.,* 223 Fed. 313, 138 C. C. A. 555; 1 Street on Foundation of Legal Liability, 346.)

One of the earliest American cases supporting the doctrine is *Walker* v. *Cronin,* 107 Mass. 555. We quote from the opinion: "The general principle is announced in Com. Dig. Action on the Case, A: 'In all cases where a man has a temporal loss

[64 Mont. 95.]

or damage by the wrong of another, he may have an action upon the case to be repaired in damages.' ''

The law of England as contained in the decisions is well set forth in the opinion by Mr. Chief Justice Gaines in the case of *Raymond* v. *Yarrington, supra,* as follows: ''The first is the leading case of *Lumley* v. *Gye,* 2 El. & B. 216, which was decided in 1853. In that case the plaintiff, the lessee of a theater, sued the defendant, alleging that a certain singer had been engaged by the plaintiff to sing at his theater and none other, and that while she was under such contract the defendant maliciously induced and enticed her not to perform for him as she had agreed to do. Upon demurrer to the declaration it was held, by three of the judges, that it showed a good. cause of ' action. Justice Coleridge, one of the four judges who sat in the case, dissented. Practically the same question came before the court in the case of *Bowen* v. *Hall,* L. R. 6 Q. B. Div. 333. It was again held that an action would lie for inducing one under a contract of service to another to leave the service. Lord Coleridge, then the Chief Justice of the Common Pleas, dissented from the opinion of the majority.

''Again, in 1893, the case of *Temperton* v. *Russell,* 1 L. R. 1893, Q. B. Div. 715, came up for decision. There the plaintiff was a contractor and builder and had made contracts with third persons to supply him with material to be used in his business. The defendants were a committee of ' certain trades unions; and for the reason that plaintiff would not comply with certain rules laid down by the unions, they induced those who had contracted to deliver him material to break their contracts, and also conspired to prevent others from entering into contracts with him. It was held that they were liable both for inducing a breach of the existing contracts and also for conspiring to prevent others from entering into contracts with the plaintiff.

''A similar case came before the House of Lords in 1897. (*Allen* v. *Flood,* [1898] L. R. App. Cas. 1.) In that case the

[64 Mont. 95.]

plaintiffs were employed by the job at work upon a ship, but were subject to be discharged at the will of their employer. Allen, the defendant, representing a boilermakers' society, called upon the agents of their employer, and stated to them, that, unless the plaintiffs were discharged, the members of the boilermakers' society, about forty in number, then at work on the ship, would be 'called out' or 'knock off' work on that day. Thereupon their employer discharged the plaintiffs; and they brought suit against the defendant, alleging in effect that he had unlawfully and maliciously caused their discharge. It was held by the court—four of the nine law lords dissenting—that, since the employer had a right to discharge the plaintiffs and since the discharge was lawful, the defendant was not liable for having procured it, although as found by the jury he acted from a malicious motive. In the numerous opinions which were given in the case, the previous cases of *Lumley* v. *Gye* and *Bowen* v. *Hall,* were discussed. After that decision it became a question whether their authority had not been shaken, if not overturned thereby. But in 1901 the important case of *Quinn* v. *Leathem* ([1901] App. Cas. 495) arose, and it was there held that, 'A combination of two or more, without justification or excuse, to injure a man in his trade by inducing his customers or servants to break their contracts with him or not to deal with him or continue in his employment is, if it results in damage to him, actionable.' All the judges concurred in the judgment, and the effect of the decision is to distinguish *Allen* v. *Flood,* and to hold the case of *Lumley* v. *Gye, Bowen* v. *Hall* and *Temperton* v. *Russell* were correctly decided.

"In *Lumley* v. *Gye* the contract was one for personal services, and the insistence of Mr. Justice Coleridge was that it was not actionable to induce the breach of such a contract except where it created the relation of master and servant in the technical and restricted sense of those terms. The majority, however, held that the rule applied to any contract for service. The decision therefore goes no further than to hold

that a cause of action lies for procuring the breach of any such contract. It may be doubted whether the contract the breach of which was induced in *Bowen* v. *Hall* should be classed as a contract for service. However that may be, the contract in *Temperton* v. *Russell* was for the delivery of material, and it does not come under that class.

"It seems to us, therefore, that the law is now settled in England that it is an actionable wrong knowingly to induce one to break his contract with another to the damage of the latter, and that it is also wrongful and actionable for two or more to accomplish such end by conspiring with each other."

The following cases hold the action does not lie: *Boyson* v. *Thorn, supra; Ashley* v. *Dixon,* 48 N. Y. 430, 8 Am. Rep. 559; *Jackson* v. *Morgan,* 49 Ind. App. 376, 94 N. E. 1021; *Land & Gravel Co.* v. *Commission Co.,* 138 Mo. 439, 60 Am. St. Rep. 560, 36 L. R. A. 804, 40 S. W. 93; *Chambers & Marshall* v. *Baldwin,* 91 Ky. 121, 15 S. W. 57, 12 Ky. Law Rep. 699, 34 Am. St. Rep. 165, 11 L. R. A. 545; *Swain* v. *Johnson,* 151 N. C. 93, 28 L. R. A. (n. s.) 615, 65 S. E. 619; *McCluskey* v. *Steele* (Ala. App.), 88 South. 367; *Sleeper* v. *Baker,* 22 N. D. 386, Ann. Cas. 1914B, 1189, 39 L. R. A. (n. s.) 864, 134 N. W. 716.

It remains to be determined whether the action will lie [6] where the acts complained of are directed toward a public official, in this case the commissioner of Indian affairs, and the contract canceled by such official.

Defendants contend that the court cannot review the action of the commissioner in canceling the leases or inquire as to the reason for his action. The first contention may be dismissed with the statement that there is no apparent purpose in this cause to review the action of the commissioner. The second proposition cannot be maintained.

Speaking for the court in *Lee* v. *Johnson,* 116 U. S. 48, 29 L. Ed. 570, 6 Sup. Ct. Rep. 249 [see, also, Rose's U. S. Notes], Mr. Justice Field said: "It is only when fraud and imposition have prevented the unsuccessful party in a contest from

fully presenting his case, or the officers from fully considering it, that a court will look into the evidence. It is not enough, however, that fraud and imposition have been practiced upon the department; * * * it *must appear that they affected its determination,* which, otherwise, would have been in favor of plaintiff.'' (The italics are ours.)

So in this case, the extent of the inquiry will be to determine only whether the conduct of Barth, the defendants' testator, affected the determination of the commissioner in canceling the leases.

Defendants say that the commissioner is presumed to have acted within his authority and rightfully in canceling the leases. There is no question about the first proposition as the leases by their terms expressly imposed upon that official the authority to cancel them for cause. As to whether his action was rightful is one of the issues to be determined on the trial of this case, should the allegations in the complaint in that behalf be controverted in the answer.

Defendants contend that representations made to the commissioner are privileged. This contention may be doubted, but if maintainable, like any other privilege, it may be waived. It is purely a matter for the court to determine on the trial of the case as a rule of evidence. Section 10536, Revised Codes of 1921, provides: ''There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: * * * 5. A public officer cannot be examined as to communications made to him in official confidence, *when the public interests would suffer by the disclosure.''*

Courts have power to have public records produced except [7, 8] ''where it is contrary to public interest for the contents of the record or document to be made public.'' (22 C. J. 959.)

Since the question in this case involves an officer of the United States, the views of the federal courts are illuminating.

[64 Mont. 95.]
In the case of *Totten* v. *United States*, 92 U. S. 105, 23 L. Ed. 605, the plaintiff brought suit in the court of claims for services rendered as a spy in the Civil War, under employment by the President. Mr. Justice Field, speaking for the court, said: "Our objection is not to the contract, but to the action upon it in the court of claims. The service stipulated by the contract was a secret service; the information sought was to be obtained clandestinely, and was to be communicated privately; the employment and the service were to be equally concealed. Both employer and agent must have understood that the lips of the other were to be forever sealed respecting the relation of either to the matter. This condition of the engagement was implied from the nature of the employment, and is implied in all secret employments of the government in time of war, or upon matters affecting our foreign relations, where a disclosure of the service might compromise or embarrass our government in its public duties, or endanger the person or injure the character of the agent. If upon contracts of such a nature an action against the government could be maintained in the court of claims, whenever an agent should deem himself entitled to greater or different compensation than that awarded to him, the whole service in any case, and the manner of its discharge, with the details of dealings with individuals and officers, might be exposed, to the serious detriment of the public. A secret service, with liability to publicity in this way, would be impossible. * * * It may be stated as a general principle, that public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated. On this principle, suits cannot be maintained which would require a disclosure of the confidences of the confessional, or those between husband and wife, or of communications by a client to his counsel for professional advice, or of a patient to his physician for a similar purpose. Much greater reason exists for the

application of the principle to cases of contract for secret services with the government, as the existence of a contract of that kind is itself a fact not to be disclosed.''

The *Totten Case* was quoted and approved in the case of *De Arnaud* v. *United States,* 151 U. S. 483, 38 L. Ed. 244, 14 Sup. Ct. Rep. 374, but that case was determined on other grounds.

In the case of *Firth Sterling Steel Co.* v. *Bethlehem Steel Co.* (D. C.), 199 Fed. 353, Thompson, District Judge, E. D. Pennsylvania, ordered expunged exhibits, drawings of armor-piercing projectiles, which the Navy Department had ordered to be treated as confidential as containing military secrets. The suit was one for the infringement of a patent on the projectile. The ruling on the privileged testimony did not prevent a trial of the case on its merits. ([C. C. A.] 216 Fed. 755.)

In the case of *Kessler* v. *Best* (C. C.), 121 Fed. 439, evidence, being archives of German consulate, was suppressed as privileged.

Our investigation has not disclosed any other case in the federal courts where the question of privilege has been directly determined.

In the case of *White* v. *Nicholls,* 3 How. 266, 11 L. Ed. 591, a prosecution for libel was maintained on a confidential letter written the President concerning a federal officer thereupon removed from office. The case of *Howard* v. *Thompson,* 21 Wend. 319, 34 Am. Dec. 238, was similar. In that case the letter was to the secretary of the treasury.

It may be that on the trial of this case the person who was commissioner when the leases were canceled will make a full disclosure of Barth's connection therewith, and that the department will approve his doing so.

The illegality of the method by which evidence has been [9] obtained does not affect its admissibility. (*State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362; *Firth*

*Sterling Steel Co.* v. *Bethlehem Steel Co.* (D. C.), 199 Fed.
353.)

Counsel for defendants say in their brief that to persuade a
sovereign power to commit a wrong does not constitute a tort,
and cite in support thereof the case of *American Banana Co.*
v. *United States Fruit Co.*, 213 U. S. 347, 16 Ann. Cas. 1047,
53 L. Ed. 826, 29 Sup. Ct. Rep. 511 [see, also, Rose's U. S.
Notes]. This case goes no further than to apply the principle
to an act committed within the territorial jurisdiction of a
foreign power.

The cases cited in the fourth subdivision of the defendants'
brief are authority for the proposition that the remedy by
injunction is available where the act of the officer is *ultra
vires*. The principle has no application to this case.

Where a public officer is given the power to cancel a con-
tract, it would seem that where he does cancel it the mental
processes would be much the same as in case he canceled a
contract as an individual, and the proof of influence by a
third party would be the same in the one case as in the other.

The law of contracts is the same when applied to those of
[10] the federal government as when applied to those of
individuals. (39 Cyc. 743; *Spofford* v. *United States,* 32 Ct.
of Cl. 452.)

In the case of *Faunce* v. *Searles, supra,* the contract in ques-
tion was breached by a school board, but apparently no ob-
jection was raised on that account.

To our mind there is no more reason for granting the right
where the contract is breached by an official than where it is
breached by an individual. The personal liability for damages
might cause one to refuse to wrongfully cancel his individual
contract at the instance of an intermeddler, while as an officer
the absence of such liability might be the occasion of his com-
mitting the wrongful act. Those who occupy public office
are no less susceptible to the influence of designing and un-
scrupulous persons because they are officers. Our govern-
ments, federal and state, are partisan. Public officers do not

always turn a deaf ear to those citizens who may have the ability to further their interests or the success of the party in power, when they seek to influence their actions officially. Mr. Justice Miller, speaking for the supreme court of the United States, concerning the conduct of the Land Department, in the case of *Johnson* v. *Towsley,* 13 Wall. 72, 20 L. Ed. 485, said: "In dealing with the public domain under the system of laws enacted by Congress for their management and sale, that tribunal decides upon private rights of great value, and very often, from the nature of its functions, this is by a proceeding essentially *ex parte,* and peculiarly liable to the influence of frauds, false swearing, and mistakes."

We recommend that the judgment appealed from be reversed and the cause remanded, with directions to overrule the demurrer to the amended complaint.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is reversed and the cause is remanded to the district court, with directions to overrule the demurrer to the amended complaint.

*Reversed.*

MR. JUSTICE HOLLOWAY dissenting.

MR. JUSTICE FARR, not hearing the argument, takes no part in this decision.

Petition for rehearing denied November 4, 1922.