QUINLIVAN, Appellant, *v.* BROWN OIL CO. et al., Respondents.

(No. 7,181.)

(Submitted January 5, 1934. Decided January 25, 1934.]

[29 Pac. (2d) 374.]

148

Cause submitted on briefs of counsel.

*Mr. W. L. Smith,* for Appellant.

*Messrs. Wood & Cooke,* for Respondents.

MR. JUSTICE STEWART delivered the opinion of the court.

The defendant, Brown Oil Company, a corporation, was engaged in the business of wholesale and retail handling and selling of gasoline and lubricating oils at Billings, Montana, where, as owner or lessee, it controlled a number of service stations. The defendant C. H. Brown, as president and manager, had direct charge of the business.

In the spring of 1931, the above-named company leased one of its service stations in Billings to Harold Sayer. The lease provided that the lessor Brown Oil Company should sell the gasoline that passed through the station to the lessee Sayer at a price equal to one cent per gallon less than the normal tank wagon price in effect at Billings at the time of delivery. It also contained the following provision: "It is further understood and agreed by the second party [Sayer] that he will maintain the established price for gasoline of the Brown Oil Company at their other service stations in Billings, Mont., and that any attempt to evade this clause shall be just cause for cancelling this agreement and that the first party does reserve the right to cancel this agreement by giving the second party 10 days written notice of their intention of doing so."

Soon after entering into this lease, Sayer entered into a contract with one C. H. Cooke and John R. Quinlivan, doing business under the name of C. & Q. Business Builders. In this contract, C. & Q. Business Builders agreed to sell, and Sayer agreed to redeem, coupon books containing coupons which, upon the making of certain purchases at Sayer's service station, would entitle the purchaser to one gallon of gasoline and/or a lubricating job free, depending upon the type and amount of the purchase made. It was agreed that Sayer would redeem not to exceed 500 of these coupon books.

Upon learning of this agreement, defendants protested to Sayer that such practice tended to reduce the regular retail price of gasoline, and consequently violated that provision of his lease which bound him to maintain "the established price for gasoline of the Brown Oil Company at their other service stations in Billings." Sayer then notified C. & Q. Business Builders of the situation and of the objections interposed by defendants, and directed them not to sell any more of the coupon books. He also had a notice published in the local newspaper, stating that he would no longer redeem the coupons. At that time C. & Q. Business Builders had sold 170 of the coupon books, but thereafter were unable to sell any more of them.

Upon this state of facts, plaintiff, as assignee of C. & Q. Business Builders, brought this action against Brown Oil Company and C. H. Brown personally for their alleged interference with the contractual relations between plaintiff's assignor and Sayer. The cause was tried to the court with a jury, and, at the close of the evidence for both sides, the court granted the defendants' motion for a directed verdict. Plaintiff has appealed from the judgment.

Though plaintiff asserts seven specifications of error, it will not be necessary to discuss all of them. All the questions raised can be disposed of upon a determination of whether or not the court erred in sustaining defendants' motion for a directed verdict.

As we view the case, the principal legal point involved in deciding the above question is whether the defendants were legally justified in inducing Sayer to breach his contract with C. & Q. Business Builders. Before passing to a treatment of this subject, however, it will be necessary to dispose of three other questions raised by plaintiff in his specifications of error, viz.: (1) Did defendants' failure affirmatively to plead justification deprive them of the right to assert such a defense at the trial? (2) Was the lease between defendants and Sayer void as in violation of section 10901, Revised Codes of 1921? (3) Did the court err in excluding evidence offered by plaintiff relative to the damages sustained by C. & Q. Business Builders?

Defendants in their answer did not plead any justification. ▉ Therefore plaintiff contends that they cannot avail themselves of that defense because it is affirmative matter, and as such, he asserts, it must be pleaded. Certainly this is the general rule. (*Nelson* v. *Young*, 70 Mont. 112, 224 Pac. 237; 49 C. J. 290, 296, and cases cited.) In this case, however, the plaintiff set out in his complaint (by way of anticipating the defense) the facts which, when denied by defendants in their answer, relieved them of the necessity of affirmatively pleading justification.

Paragraph 5 of the amended complaint reads in part as follows: " * * * But the defendants caused and induced the said Harold A. Sayer to violate and refuse to perform the same, by intimidations and threats that unless he did so they would cancel the lease to his said filling station and force him out of business. That the defendants had no right or authority to cancel said lease nor to interfere with the performance of said contract." Thus it appears that plaintiff has set up in negative form the very facts which defendants otherwise would have had to plead affirmatively in their answer in order to avail themselves of such a defense. We hold that when defendants denied the allegations they raised the issue just as completely as though they had affirmatively pleaded the facts relied upon as constituting justification.

In the case of *Digen* v. *Schultz*, 65 Mont. 190, 210 Pac. 1057, 1058, the court said: "It is urged by counsel for plaintiff that waiver is an affirmative defense, which must be set up in the answer. This is undoubtedly the law, when the facts constituting the waiver do not otherwise appear. A waiver of lien is defensive matter which must generally be pleaded in the answer unless it otherwise appears. * * * The facts above related, constituting the waiver, are set forth in the plaintiff's complaint, and are also testified to by the plaintiff himself, which may be taken advantage of by the defendant." Likewise, in this case, the facts constituting the justification are set forth in plaintiff's complaint, and are testified to by plaintiff's witness. Hence the defendants cannot be deprived of the right to prove justification as a defense. (*Digen* v. *Schultz*, supra; *First Nat. Bank of Morrill* v. *Ford*, 30 Wyo. 110, 216 Pac. 691, 31 A. L. R. 1441; *Eldridge* v. *Pierce*, 90 Ill. 474; *Williams* v. *Rhodes*, 81 Ill. 571; see, also, 49 C. J. 151.)

Plaintiff contends that the lease between defendants and ██ Sayer was void as in violation of section 10901, Revised Codes of 1921. The section is a general one dealing with "Unlawful trusts and monopolies." In substance, the statute makes it unlawful for any person to make contracts for the purpose of fixing the price of any article of commerce, or in

any way to control or prevent unrestricted competition in the same.

The lease under consideration here binds the lessee to maintain the established price of gasoline of the lessor at its other service stations in Billings. But there is nothing in the record to indicate that defendants and Sayer controlled, or were by the terms of the lease attempting to control, the price of gasoline generally in and around Billings. In reality, all that the defendants did was merely to attempt to protect the sale price of their own product when sold by their lessee through their own station. Such a contractual provision is not void; it is not within the contemplation of section 10901, supra. In a note under this section reference is made to an annotation in 9 Ann. Cas. 906, for authorities upon the "Test of Legality of Combinations in Restraint of Trade." In that annotation numerous authorities on this point are to be found. The case of *Merriman* v. *Cover,* 104 Vt. 428, 51 S. E. 817, 819, is cited there. In that case the court said: "Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public."

Again, in the case of *Over* v. *Byram Foundry Co.,* 37 Ind. App. 452, 77 N. E. 302, 304, 117 Am. St. Rep. 327, it was said: "Combinations between individuals or firms for the regulation of prices and of competition in business are not monopolies, and are not unlawful as in restraint of trade, so long as they are reasonable, and do not include all of a commodity or trade, or create such restrictions as to materially affect the freedom of commerce." (See, also, *Fisher Flouring Mills Co.* v. *Swanson,* 76 Wash. 649, 137 Pac. 144, 51 L. R. A. (n. s.) 522; *Grogan* v. *Chaffee,* 156 Cal. 611, 105 Pac. 745, 27 L. R. A. (n. s.) 395; *Munter* v. *Eastman Kodak Co.,* 28 Cal. App. 660, 153 Pac. 737.)

In the case of *Merriman* v. *Cover,* supra, the court held that contracts which are not partially or incidentally in restraint

of trade, and are not specially injurious to the public, are generally upheld.

The principal object of the contract between defendants and Sayer was, not the stifling of competition within the meaning of section 10901, supra, but the leasing of a service station. The provision therein relating to the fixing of the retail price of gasoline to be charged by Sayer was merely incidental to the contract of lease. The lease was not void.

Plaintiff claims that the court erred in excluding certain evidence offered by him relative to damages. If, however, the directed verdict must be sustained upon the ground that defendants were legally justified in acting as they did, the question of damages is then no longer material to the issue.

In the case of *Stiemke* v. *Jankovich,* 72 Mont. 363, 233 Pac. 904, 907, the court said: "A canvass of the evidence will answer the question as to whether the court erred in refusing to submit the issues as requested, for where the evidence is susceptible of but one conclusion by reasonable men, the court may either direct a verdict or withdraw the case from the jury and render judgment." (See, also, *Davidson* v. *Stagg,* 94 Mont. 272, 22 Pac. (2d) 152, *Helena Nat. Bank* v. *Rocky Mountain Tel. Co.,* 20 Mont. 379, 51 Pac. 829, 63 Am. St. Rep. 628, and *Milwaukee Land Co.* v. *Ruesink,* 50 Mont. 489, 148 Pac. 396.)

In this case there is no conflict in the evidence; it is susceptible of but one conclusion. The defendants do not deny that they were instrumental in procuring the severance of the agreement between C. & Q. Business Builders and Sayer; but there is no evidence whatever that they acted maliciously to injure the business of the former, or for any reason other than to protect their contractual rights based upon their lease with Sayer. So the only question presented was whether or not defendants were legally justified in causing Sayer to discontinue the agreement. Under this view of the case, if the court was correct in its decision that defendants were legally justified in acting as they did, and if it was correct in directing a verdict in accordance with such decision, the matter of damages then

became immaterial. Hence it is not necessary to decide whether the evidence on this point was erroneously rejected.

Plaintiff alleges that defendants induced Sayer to violate and refuse to perform his agreement with C. & Q. Business Builders by threats that, unless he did so, they would cancel the lease to his filling station. It is further alleged "that defendants had no right or authority to cancel said lease nor to interfere with the performance of said contract, and their said acts were done with malice and the intent to destroy the said business of C. & Q. Business Builders."

The general rule is commonly stated to be "that it is a legal wrong for one person to break up or interfere with any contract relation subsisting between other persons." (15 R. C. L. 52; *Hundley* v. *Louisville etc. Ry. Co.*, 105 Ky. 162, 48 S. W. 429, 88 Am. St. Rep. 298, 63 L. R. A. 289.) And, while, as properly said by this court in the case of *Chesnut* v. *Sales*, 49 Mont. 318, 141 Pac. 986, 987, Ann. Cas. 1916A, 626, 52 L. R. A. (n. s.) 1199, "it is not the theory of our Code that substantial damage suffered by one through the fault of another shall be unredressed, but that in all such cases the damaged party shall have full compensation," yet, before an act charged to have been an interference with contract relations may be made the subject of an action to recover damages for the resultant injury, malice in some form is generally required as an essential ingredient of the alleged wrong, and malice as used in these cases means merely the intentional doing of a wrongful act without legal justification or excuse, or, in other words, "the wilful violation of a known right." (*London Guarantee Co.* v. *Horn*, 206 Ill. 493, 69 N. E. 526, 530, 99 Am. St. Rep. 185; *Lucke* v. *Clothing Cutters' & Trimmers' Assembly No. 7507, K. of L.*, 77 Md. 396, 26 Atl. 505, 39 Am. St. Rep. 421, 19 L. R. A. 408.)

In the case of *Simonsen* v. *Barth*, 64 Mont. 95, 208 Pac. 938, 939, this court substantially adopted and followed the general rules quoted above. But in that case it also recognized the fact that in certain cases a defendant might be justified in interfering with the contractual relations of others and causing

one of them to breach a contract. There the court said: "Our conclusion is that where a party, not in the exercise of a right reposing in him induces another to break his contract, by any means whatever, he is responsible in damages to the other party to the contract."

In the present case the defendants were acting "in the exercise of a right reposing in them." They were vitally interested in their lease with Sayer, and consequently in any act that tended to breach the provisions of that lease. This is especially true where the threatened breach would result in injury to defendants. Therefore, when they induced Sayer to breach his agreement with C. & Q. Business Builders, they were exercising an absolute right in them by reason of their lease with Sayer.

"Absolute rights are rights incident to the ownership of property, rights growing out of contractual relations, or the right to enter or refuse to enter into contractual relations. These rights the individual may exercise without reference to his motive as to any injury directly resulting therefrom, since the courts, apparently on the ground of expediency, have consistently held that such injury is not a legal injury in the sense that it is actionable." (15 R. C. L. 71, and cases there cited.)

In the case of *R and W Hat Shop* v. *Sculley,* 98 Conn. 1, 118 Atl. 55, 59, 29 A. L. R. 551, it is said: "Procuring the breach of a contract without knowledge of it, or acting in the exercise of an equal or a superior right, is acting with just cause or excuse, and when this appears it is a justification for what would otherwise be an actionable wrong."

There is no merit in plaintiff's contention that no justification was shown for defendants' acts which would relieve them from liability. The record is barren of any evidence indicating malice or intent on the part of the defendants to destroy the business of plaintiff's assignors. Their primary and only purpose, so far as the record discloses, was the honest furtherance of their own business enterprise. They sought only to prevent financial loss through price cutting in the sale of

156

gasoline, and to compel Sayer to comply with the provisions of his lease. The fact that damage may incidentally have resulted to C. & Q. Business Builders from such acts does not necessarily make defendants liable for such damage. (*Davisson* v. *Mount Moriah Cemetery Assn.*, 87 Mont. 459, 288 Pac. 612, 81 A. L. R. 1419; *Beekman* v. *Marsters*, 195 Mass. 205, 80 N. E. 817, 122 Am. St. Rep. 232, 11 Ann. Cas. 332, 11 L. R. A. (n. s.) 201; *R and W Hat Shop* v. *Sculley*, supra; annotations and collection of cases in 29 L. R. A. (n. s.) 869; 15 R. C. L. 58.)

Defendants' interest in the lease with Sayer sufficiently justified them in acting as they did. Therefore, since there was no conflict in the evidence, the court did not commit error in directing a verdict for the defendants.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.