**Don T. HOLLADAY, Plaintiff,**

v.

**STATE OF MONTANA; State Department of Institutions; Lawrence M. Zanto, Director of Institutions; Robert J. Rhay, Administrator, Division of Corrections; Herman Gibson, Business Manager, Defendants.**

**No. CV–80–66–H.**

United States District Court,
D. Montana,
Helena Division.

Jan. 30, 1981.

Carl A. Hatch, Small, Hatch & Doubek, Helena, Mont., for plaintiff.

J. Daniel Hoven, Agency Legal Services Bureau, Dept. of Justice, Helena, Mont., for defendants.

## AMENDED MEMORANDUM OPINION

BATTIN, Chief Judge.

The basic issues raised by defendants' motion to dismiss are (1) whether a federal court has jurisdiction over a civil rights suit against a state by a former superintendent of a state institution and (2) whether an allegation that a state employer tortiously interfered with an employee's "right to work in his profession and contractual employment rights" states a cause of action under Montana law.

For the reasons provided below, we conclude that, first of all, this Court lacks jurisdiction over the State of Montana and the State Department of Institutions because (a) a state is not a citizen for the purposes of diversity jurisdiction, (b) the State of Montana cannot be sued by a private citizen under the 11th Amendment prohibition against such suits, and (c) the State of Montana is not a "person" under 42 U.S.C. § 1983 (1976). The State of Montana and the State Department of Institutions should thus be dismissed as defendants. Second, while it is doubtful that interference with the right to work states any valid constitutional violation under the United States Constitution, it is not impossible that a right of privacy violation occurred. For this reason, the preferable remedy would be to encourage defendants

to move for a more definite statement of the constitutional rights alleged to have been violated.

## I. FACTUAL BACKGROUND

From 1966 to 1978, the plaintiff Don T. Holladay was the superintendent of the Pine Hills School for Boys, a division of the Montana State Department of Institutions, located at Miles City, Montana. On May 23, 1978, defendant Lawrence M. Zanto, the Director of Institutions, suspended Holladay from his position. In addition, Holladay alleges that Zanto and other state officials supplied the media with false and malicious charges of wrongdoing and that two officials broke into Holladay's home and searched through his personal effects.

On May 21, 1980, Holladay filed suit in this Court against the State of Montana, the State Department of Institutions, Lawrence M. Zanto (Director of Institutions), Robert J. Rhay (Administrator of the Division of Corrections), and Herman Gibson (Business Manager), seeking $2.5 million in damages. On July 8, 1980, defendant State of Montana moved to dismiss the suit on the grounds that this Court lacked jurisdiction and that the complaint failed to state a claim upon which relief could be granted. On July 31, 1980, plaintiff filed an amended complaint alleging for the first time the citizenship of defendants Rhay and Gibson.

## II. JURISDICTION OVER THE STATE OF MONTANA

■ Peculiarly enough, neither the complaint nor the amended complaint contain any specific jurisdictional allegation other than the geographical location of defendants and an amount in controversy in excess of $10,000. This implies that plaintiff is invoking diversity jurisdiction under 28 U.S.C. § 1332 (1976). Yet the nature of these alleged torts, all civil rights violations, also suggests jurisdiction of a "federal question" under 28 U.S.C. § 1331 (1976) or of a civil rights violation under 28 U.S.C. § 1343 (1976). However, no matter which of these jurisdictional statutes plaintiff actually wishes to rely on, none of the statutes can supply this Court with jurisdiction over the State of Montana or over the State Department of Institutions.

■ First of all, the reliance upon this Court's diversity jurisdiction for a suit against the State of Montana seems ill-founded. It is well-settled that a state is not a citizen for purposes of diversity jurisdiction under 28 U.S.C. § 1332 (1976). *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); 13 Wright, Miller & Cooper, *Federal Practice and Procedure*: § 3602 at pp. 599–600 (1975). Furthermore, a political subdivision is not a citizen for purposes of diversity jurisdiction if the political subdivision is simply the arm or alter ego of the state. *Moor v. County of Alameda, supra,* 411 U.S. at 717, 93 S.Ct. at 1799; 13 Wright, Miller & Cooper at p. 600. The State Department of Institutions is merely an alter ego of the State of Montana, MCA § 2–15–104(1) (1979), and is not the sort of separate corporate entity held to be a citizen for purposes of diversity. 13 Wright, Miller & Cooper at p. 769 n. 22. Thus, this Court lacks diversity jurisdiction over both the State of Montana and the State Department of Institutions.

■ As to the alleged "federal question" and civil rights jurisdiction, both run afoul of the 11th Amendment which states as follows:

The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Under the 11th Amendment, suit by a private party seeking to impose liability which must be paid from public funds in the state treasury is barred from being prosecuted in the federal courts. *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1978); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Since damages assessed against the state or a state agency would be recovered from the state treasury, the 11th Amendment prohibits this action from proceeding, absent an express waiver by the State of Montana of its 11th Amendment right.

■ Plaintiff argues that article II, section 18 of the 1972 Montana Constitution acts as just such an express waiver of Montana's 11th Amendment rights. This section provides as follows:

The State, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by two-thirds vote of each house of the legislature.

Mont.Const., art. II, § 18. We must remember, however, that waivers of the 11th Amendment are not to be lightly implied and must be in the form of clear and express consent to be sued in federal court, *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974). The Montana waiver of sovereign immunity seems to be limited to consent to be sued in state courts and should not be construed as consent to be sued by private citizens in federal courts.[1]

As this Court stated a few months ago in *Gillespie v. State of Montana,* CV–79–172–H (D.Mont., Helena Div., July 24, 1980) at pp. 2–4, neither the statutes implementing the sovereign immunity waiver (MCA §§ 2–9–301 to –318 (1979)) nor the legislative history of the sovereign immunity waiver provision (*see* Mont.Const.Conv. Studies, Report No. 10 "Bill of Rights") suggest an intent to submit to suit in federal court. In referring to the implementing statutes and the legislative history, we stated:

These factors militate strongly against reaching the conclusion that the state has waived its Eleventh Amendment immunity. When considered in light of the Supreme Court's declaration that it will find a state has waived its constitutional protections under the Eleventh Amendment "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction,'" *Edelman v. Jordan,* 415 U.S. 651, 673 [94 S.Ct. 1347, 1360, 39 L.Ed.2d 662] (1974), substantial doubt arises as to whether Art. II, § 18 of the Montana Constitution was intended to effectuate a waiver of Eleventh Amendment guarantees. *See also Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 54 [64 S.Ct. 873, 876, 88 L.Ed. 1121] (1944).

Thus, art. II, section 18 of the Montana Constitution is not a waiver of Montana's Eleventh Amendment rights.

■ To be sued under the federal civil rights statutes such as 42 U.S.C. § 1983 (1976), Montana must be considered a "person." The United States Supreme Court has held that, because of the Eleventh Amendment prohibition, a state is not a "person" under the federal civil rights statutes and thus cannot be sued thereunder. *Quern v. Jordan,* 440 U.S. 332, 343, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979). In our opinion in *Gillespie v. State of Montana,* we rejected the notion that this holding had been overruled by *Monell v. Dept. of Social Services,* 436 U.S. 658, 663, 98 S.Ct. 2018, 2021, 56 L.Ed.2d 611 (1978). We concluded instead that "*Monell* has left the rule of *Edelman* undisturbed." *Gillespie v. State of Montana* at p. 5. Thus, the state of Montana is not subject to suit under § 1983 because it is not a "person." This is yet another reason why the state and the state agency should be dismissed as defendants.

■ Defendants also argue that the aegis of the Eleventh Amendment immunity should extend to the state officials themselves. This argument is unpersuasive. First of all, 42 U.S.C. § 1983 (1976) was

---

1. Although a recent opinion of the federal district court of Rhode Island holds *contra, Marrapese v. Rhode Island,* 500 F.Supp. 1207 (D.R.I.1980), the following decisions have all refused to recognize a waiver of sovereign immunity as consent to be sued under the Eleventh Amendment: *Riggle v. State of California,* 577 F.2d 579 (9th Cir. 1978); *Confederated Tribes of Colville v. Washington,* 446 F.Supp. 1339, 1349–50 (E.D.Wash.1978), *rev. on other grounds,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980); *Safeco Ins. Co. v. Guyton,* 443 F.Supp. 10, 12–13 (C.D.Cal.1978); *Flesch v. Eastern Pa. Psychiatric Inst.,* 434 F.Supp. 963, 978 (E.D.Pa.1977). And although Judge Russell Smith also reached a contrary result in *Peretti v. Montana,* 464 F.Supp. 784, 788 (D.Mont.1979), the issues raised here were never explicitly addressed.

enacted to remedy civil rights violations made by any government official. Therefore, when state officers act under state law in violation of another's civil rights, the state has no power to impart its immunity to these officials; but if the allegations are true, the officials are stripped of their official character and subjected in their person to the consequences of their individual conduct. *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974), *citing Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). Second, defendants argue that MCA § 2–9–305(2) (1979), permitting government employees who are sued to seek indemnity and joinder of the governmental body, somehow provides the exclusive method by which state officials may be sued. Since the Eleventh Amendment prohibits joinder of the state in this case, defendants argue that the state officials should be found similarly immune. It seems illogical to assume that MCA § 2–9–305(2) (1979) was meant to do anything but facilitate suit against the sovereign and its employees. There is certainly no evidence in MCA § 2–9–305(2) (1979) of a legislative intent to impart immunity to state officials in a federal civil rights suit under 42 U.S.C. § 1983 (1976). For these reasons, this Court possesses jurisdiction over the state officials sued here even though this Court lacks jurisdiction over the state and its subdivisions.

■ Finally, although this issue is not addressed by the parties, it must be noted that we need not consider any violations of the Montana Constitution. Such violations of the Montana Constitution would not affect any decision here dismissing the state and the state institution as parties since, under the Eleventh Amendment, we would still lack jurisdiction over any claims against the state or its subdivision. An allegation of violations of the Montana Constitution could not supply jurisdiction which would otherwise be absent.

### III. INTERFERENCE WITH RIGHT TO WORK

■ In Count III of his Amended Complaint, plaintiff states as follows:

Plaintiff alleges that defendants further interfered with plaintiff's work as superintendent in defendant Rhay's making derogatory and defamatory statements about plaintiff at a superintendents [sic] meeting held May 23, 1978, and to the staff of Pine Hills School, instructing the staff at Pine Hills School to not communicate with plaintiff, and instilling fear of reprisal in said staff if they dared to speak in favor of or align themselves with plaintiff.

Such malicious, aggravated and unjustified acts on the part of said defendant and defendant Department of Institutions' failure to adequately supervise the activities of defendant Rhay and the situation which prevailed at Pine Hills School interfered with plaintiff's work and obligation as well as plaintiff's right to work and guide the activities of Pine Hills School and ultimately was a procuring cause of plaintiff's suspension and subsequent resignation.

According to his brief, plaintiff believes that this language alleges "a tortious interference with his right to work in his profession and contractual employment rights with the State." Plaintiff's Brief in Answer to Defendant's Motion to Dismiss, p. 6. Montana law does, it is true, recognize that "it is a legal wrong for one person to break up or interfere with any contract relation subsisting between other persons." *Quinlivan v. Brown Oil Co.*, 96 Mont. 147, 154, 29 P.2d 374, 377 (1934), *quoting Hundley v. Louisville Railway Co.*, 105 Ky. 162, 48 S.W. 429. This tort of contract interference, however, lies only against a third person and not against the party to the contract. *Simonsen v. Barth*, 64 Mont. 95, 100, 208 P. 938, 939 (1922); Restatement of Torts (Second) § 766 (1979). Presumably the remedies available for a breach of contract are sufficient to protect the contractual parties themselves.

■ Thus, while it is not impossible that one party to a contract may have a tort remedy against the other party, it seems doubtful that Count 3 of plaintiff's complaint states such a tort under either Montana or federal law. Rather all these

allegations seem to be constitutional violations such as those included in the allegations of Counts 1 and 2. Recognizing this, it still seems improper to dismiss Count 3 for failure to state a claim as defendants would have us do. A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. 2A Moore's Federal Practice ¶ 12.08 at pp. 2273–74 (1980). Furthermore, mere vagueness or lack of detail is not ground for a motion to dismiss but should be attacked by a motion for a more definite statement. *Id.* at p. 2285. Considering Count 3 as a constitutional violation rather than a tort, it thus states a claim of sorts, and a motion for a more definite statement would be the preferable method to determine what specific constitutional rights are alleged to have been violated.[2]

## IV. SUFFICIENCY OF COUNTS 1 AND 2

■■■■ Defendant's attacks on the constitutional violations alleged in Counts 1 and 2 also charge that the language of the complaint is insufficient to state a claim for relief under federal law because the constitutional rights violated are not specified. Count 1 alleges as follows:

By a letter dated May 23, 1978, from defendant Lawrence M. Zanto, plaintiff was wrongfully and without any prior notice suspended as Superintendent of Pine Hills School, all of which was grossly in violation of plaintiff's federal and state constitutional and civil rights . . . .

Defendants, Department of Institutions, Zanto and Rhay further improperly and wrongfully informed the news media and others or caused the news media and others to be informed of such or similar charges and allegations which were false, unfounded, baseless, unprivileged and defamatory.

2. Although plaintiff does not appear to be alleging a due process violation, this Court has recognized in the past that termination of a state employee without notice or hearing does not normally violate due process. *See Cookson*

Such representations, charges and allegations . . . . alleged and charged plaintiff with having committed various crimes and tended to and did directly injure plaintiff in respect to his office and profession by imputing to him general disqualification in those respects which plaintiff's office and profession peculiarly require and which have a natural tendency to lessen the profits plaintiff had and could have derived from his office and profession.

Defendant argues, quite persuasively, that this count actually alleges common law defamation. The federal courts have steadfastly refused to allow damages for defamation under § 1983 "because a defamed person has not been deprived of any rights, privileges, or immunities secured to him by the Constitution or laws of the United States." *Morey v. Independent School District,* 312 F.Supp. 1257, 1262 (D.Minn.1969), *aff'd,* 429 F.2d 428 (8th Cir. 1970). Furthermore, § 1983 actions have not generally been available to persons claiming injury to their reputations. *Paul v. Davis,* 424 U.S. 693, 702, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976), *reh. den.,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). Even so, a loss of reputation, when coupled with a termination of employment, may involve a denial of due process. *Allison v. City of Live Oak,* 450 F.Supp. 200, 204 (M.D.Fla.1978), *citing Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Thus, Count 1 should not be dismissed for failure to state a claim.

■■■■ Count 2, alleging that Rhay and Gibson searched Holladay's house without his permission, clearly alleges a violation of the Fourth Amendment prohibition against illegal searches, as well as a violation of Holladay's right to privacy. Both such rights are protected by § 1983. *Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961), *overruled on other grounds,* 436 U.S. 658, 98 S.Ct. 2018, 56

*v. Lewistown School District # 1,* 351 F.Supp. 983 (D.Mont.1972); *Weber v. Highway Commission of the State of Montana,* 333 F.Supp. 561 (D.Mont.1971).

L.Ed.2d 611 (1978); *York v. Story*, 324 F.2d 450, 456 (9th Cir. 1963), *cert. den.*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964). Count 2 sufficiently alleges a claim for relief. As noted above in discussing Count 3, a motion for a more definite statement to clarify Counts 1 and 2 would seem the better remedy here as well.