MID-WEST COAL COMPANY *v.* HENSON.

Opinion delivered May 2, 1932.

*Holland & Holland, Vincent M. Miles* and *W. L. Curtis,* for appellant.

*Cravens & Cravens,* for appellee.

McHANEY, J. Apparently because of an explosion in its coal mine, in which several lives were lost, in February, 1928, and in order to evade, if possible, liability therefor, the Mama Coal Company, a corporation, surrendered its charter on April 23, 1928. It did not own the mine, but leased same from the Western Coal and Mining Company, which lease had expired, or was about to expire. It did own some mining equipment. On the same day, and at the same meeting of stockholders convened to authorize a surrender of its charter, appellant, Mid-West Coal Company, was organized with the same stockholders, who subscribed for and were issued stock in the same amounts as in the Mama Coal Company, with the exception of Valentine Vervdck. He was killed in the explosion, and the stock held by him in the Mama was issued to his widow, Augustine Vervdck. The new com-

pany, Mid-West Coal Company, procured a new lease, took possession of the mine, machinery and equipment with the knowledge and consent of everybody concerned, and continued in the possession and use thereof until this suit was brought by certain creditors of the Mid-West for the appointment of a receiver on February 13, 1930. A receiver was appointed, and, with the consent of the corporation, took charge of the property. On March 21, the receiver filed his report and inventory of the property, showing cash on hand of $197.42 and personal property invoiced at the value of $12,596.47. A few days later he applied to the court for permission to sell the property at private sale, in which all the appellants joined, with the exception of Mr. W. L. Curtis, who was made trustee for the Mama company on dissolution. The court refused to permit a private sale, ordered the property which had been inventoried by the receiver to be advertised for sale, and that the two highest bids be submitted to the court. It was advertised, and at the sale appellee Henson bid $6,200, and one Graham bid $6,000. Report was made to the court of these bids, and the Henson bid was accepted, and the report of sale approved and confirmed on April 15, 1930, he having paid his bid in cash. A bill of sale was executed and delivered to him at the court's direction. Thereafter, on April 26, 1930, appellants, Curtis and Augustine Vervdck, intervened, setting up certain claims to the property sold to Henson, and asking that the sale be set aside. On May 5, appellant Templeton intervened therein for the same purpose. The court vacated its order of confirmation of sale. Thereafter a number of motions, demurrers, answers and cross-complaints were filed, and on a final hearing the court dismissed all interventions, confirmed the sale, and the case is here on appeal.

We think the court correctly confirmed the sale. The creation of the new corporation, the Mid-West Coal Company, with the same stockholders owning and holding the same number of shares as in the old, amounted to sub-

stantially the same thing as changing its name from Mama to Mid-West Coal Company. It was simply an effort to evade possible liability for personal injury, but, whether it succeeded in that purpose or not, the Mid-West Coal Company was in effect a continuation of the Mama Coal Company. All the interveners were cognizant of all the facts, and not only participated therein, but consented thereto. They stood by, with full knowledge, permitted a *bona fide* sale by the receiver to an innocent purchaser for value, and Vervdck and Templeton actually petitioned the court to permit the receiver to make a private sale. Templeton was the president of the Mama Coal Company. They permitted the sale to be advertised, the property sold, the sale confirmed, and the purchase money paid without objection, and with full knowledge of all the facts. They are therefore estopped from questioning the validity of said sale. There are so many facts in this case calling for the application of the doctrine of estoppel that we do not review them all. What we have said shows conclusively that it would be so manifestly inequitable and unconscionable to permit appellants to come in and upset a sale under such circumstances as to make the citation of authorities a work of supererogation.

The decree is correct, and is therefore affirmed.