THOMSON, Plaintiff, *v.* NYGAARD, Defendant.
LESCHER, Trustee, Respondent, *v.* SANDS et al., Appellants.

(No. 7,290.)

(Submitted December 4, 1934. Decided January 4, 1935.)

[41 Pac. (2d) 1.]

*Mr. W. B. Sands* and *Messrs. Towner & Lewis*, for Appellants, submitted a brief; *Mr. Sands* argued the cause orally.

534

*Messrs. Freeman, Thelen & Freeman,* for Respondent, submitted a brief; *Mr. Ernest Abel,* of Counsel, argued the cause orally.

## Opinion: PER CURIAM.

Thomson brought this action against Nygaard to recover possession of certain coal mining property situated in Chouteau county. H. G. Lescher, trustee, hereinafter called intervener, upon leave of court filed a complaint in intervention, claiming to be the owner of the same property as well as additional lands. On his petition and upon order of court, W. B. Sands, Henry Wedeking and Dan Sargent were made parties defendant. Wedeking filed a disclaimer of any interest in any of the property. Sargent, Nygaard and Sands each separately filed an answer to the complaint in intervention, setting forth their respective interests in the property or parts of it. We need not here set forth their respective claims. It is sufficient to say that plaintiff Thomson, and defendants Nygaard, Sands and Sargent, all claim through W. R. Hensen. Hensen, it appears, commenced an action against Mackton Coal Company on February 27, 1925, on a contract debt; on May 1, 1925, he obtained judgment. Execution was issued and levied upon all the property described in the complaint in intervention. The property was sold on August 15, 1925, to W. R. Hensen by the sheriff of Chouteau county, who obtained a sheriff's certificate of sale. In 1927, Hensen sold to Ira S. Harbolt, and made an assignment of the sheriff's certificate of sale. Harbolt in the same year assigned to Sands, who obtained a sheriff's deed on March 28, 1928. Thomson and the defendants above named, except Wedeking, claim through or under Sands. Intervener claims title by virtue of being the purchaser at a mortgage foreclosure sale in an action brought by the mortgagee against the Mackton Coal Company in the federal court, resulting in a deed to him from the United States marshal. The action became one to quiet title. It was tried to the court sitting without a jury. At the trial, by agreement, the intervener first put in his evidence, consisting almost wholly of documentary evidence. De-

fendants thereupon moved to dismiss the complaint in intervention. The motion was denied. Defendants did not offer any evidence. Judgment went in favor of intervener, and defendants and Thomson have appealed.

Defendants contend that the complaint in intervention does not state facts sufficient to constitute a cause of action. The question was raised by objection to the introduction of evidence. The first attack upon the complaint is that the allegations with respect to the ownership of the property are insufficient. The pleading on this point alleges: ''That the plaintiff intervener is now and since March 21, 1928, has been, the sole owner in fee simple and entitled to the possession during all such time of the following described property, formerly owned by the Mackton Coal Company, a corporation [here follows a description of the property], which said property came into plaintiff's ownership by reason of an action to foreclose and sale in the United States court, district of Montana, the chain of title to said property to plaintiff being fully set forth in detail and described in a certain deed, a copy of which is annexed hereto, marked Exhibit A and made a part of this complaint.''

Defendants contend that the exhibit attached to the complaint in intervention does not allege all the details necessary to support plaintiff's claim of ownership, and for that reason the complaint is insufficient.

In a suit to quiet title, like an action in ejectment, ''the plaintiff is not required to deraign his title in his complaint. Under the allegation of ownership, he may prove such title as he has from whatever source he may have acquired it, and by any species of conveyance which is recognized by law.'' (*Consolidated Gold & S. Min. Co.* v. *Struthers,* 41 Mont. 565, 111 Pac. 152, 157; and see *McKay* v. *McDougal,* 19 Mont. 488, 48 Pac. 988, and *Le Vasseur* v. *Roullman,* 93 Mont. 552, 20 Pac. (2d) 250.) Hence, had plaintiff in intervention stopped when he had alleged his ownership of the described property, the allegation of ownership would have been sufficient.

The mischief arising here is the further allegation undertaking to show the source of his title. But we think intervener's allegations with respect to the source of his title did not entail the consequences contended for by defendants. The unnecessary allegations simply advised defendants of the theory upon which plaintiff owned ownership. Of course, had the exhibit shown anything in conflict with the general allegations of ownership, the specific allegation as to the source of plaintiff's title would control over the general allegation. (Compare *Zosel* v. *Kohrs,* 72 Mont. 564, 234 Pac. 1089.)

The rule deducible from the authorities is well stated by the supreme court of California, in *Martin* v. *Hall,* 219 Cal. 334, 26 Pac. (2d) 288, 289, as follows: "It is the law that where a party undertakes to plead his title specially, as well as generally, the special allegations may be treated as surplusage if insufficient or incomplete. (*Smart* v. *Peek,* supra [213 Cal. 452, 2 Pac. (2d) 380].) But where the special allegations affirmatively reveal the weakness of his title, their effect is to nullify the general allegations." (Citing cases.) To the same effect is *State* v. *Rolio,* 71 Utah, 91, 262 Pac. 987.

So the question resolves itself into this: Does the exhibit referred to in the complaint show affirmatively that intervener has no title to the property? Otherwise stated, Does the special allegation with reference to intervener's source of title nullify the general allegation of ownership in him, because of an affirmative showing of no title in intervener? The exhibit referred to, being the deed from the United States marshal, recites that the Mackton Coal Company executed and delivered a mortgage and deed of trust, on January 3, 1916, to the Stanton Trust & Savings Bank, covering the property involved here, to secure bondholders holding bonds in the principal sum of $100,000, all payable January 3, 1921; that the Stanton Trust & Savings Bank resigned as trustee before the sale of any of the bonds, and that the Northwestern Trust Company of St. Paul, Minnesota, became its successor by order of court upon petition made; that upon default in the payment of the bonds, the Northwestern Trust Company brought action

in the United States District Court in the Montana district against the Mackton Coal Company, W. R. Hensen, and others, for the foreclosure and enforcement of the deed of trust; that on December 8, 1927, a decree was made in the cause declaring that the deed of trust was a valid conveyance of the described property for the security of the bonds, and that the bonds were duly issued. It further recites that the decree provided for a sale of the property covered by the deed of trust, after due notice given; that unless the bonds were paid before confirmation of the sale, the marshal was authorized to execute a deed to the purchaser barring and foreclosing defendants since the commencement of the suit, of all equities and rights of redemption. The deed recites that, whereas the Mackton Coal Company made default in the payments required by the decree made in the cause on December 8, 1927, the deputy United States marshal for the state of Montana, after giving notice thereof, sold the property on February 25, 1928, at public auction to H. G. Lescher, trustee for and in behalf of himself and his associates, to the highest bidder; that report of the sale was made to the court and by it confirmed on November 21, 1928, after giving due notice. It recites that to carry into effect the sale made pursuant to the decree, the property (describing it) was granted, bargained, sold and conveyed to H. G. Lescher, trustee.

Bearing in mind that there is a presumption in favor of ▮ jurisdiction and other requisites to the validity of judgments in courts of record (*Thelen* v. *Vogel*, 86 Mont. 33, 281 Pac. 753), we think it was not incumbent upon plaintiff to do more than he did in alleging the source of his title. The special allegations showing the source of his title do not destroy the general allegation of ownership in him.

Defendants contend that, having chosen to show the source of his title, it was incumbent upon intervener to allege every step in the federal court proceedings. As stated above, our only inquiry is whether the specific averments of source of title are inconsistent with the general allegation of ownership.

It is contended that there is no sufficient allegation in the

complaint that intervener's predecessor had any interest in the property. From the quoted portion of the complaint, above, there appears the allegation, perhaps in the way of a recital, "formerly owned by the Mackton Coal Company." We think this was sufficient as against a general demurrer. But were we to say there was merit in this contention, the defect is cured by the answer of defendants wherein it is made to appear that their rights, if any, came through the Mackton Coal Company, and hence there was no issue involved in the action as to the ownership of the Mackton Coal Company. The issue is one of priority among respective claimants, all of whom trace their rights to a common source. In such a situation neither party can question the title of the common predecessor in interest. (51 C. J. 174.) If there were defect in the complaint in the particular claimed, it was cured by the answer of defendants.

It is contended that, since it is alleged in the complaint that Sands secured a deed on March 23, 1928, and that this is prior to any record title of intervener, the complaint negatives any title in the intervener at the time the rights of Sands attached. This contention overlooks the force of section 10558, Revised Codes of 1921, which makes a judgment conclusive between the parties and their successors in interest by title subsequent to the commencement of the action, providing they have notice, actual or constructive, of the pendency of the action. The complaint shows that Hensen, the predecessor in interest of Sands and the other defendants, was a party defendant in the foreclosure action in the federal court. The complaint alleges the filing of a *lis pendens* on the date of filing the complaint in the federal court, and also alleges in paragraph III the following: "That said W. B. Sands was fully conversant with the action of foreclosure in case number 274 in the United States Court, District of Montana, wherein the Northwestern Trust Company, a corporation, was plaintiff, and the Mackton Coal Company, W. R. Hensen et al., were defendants, and knew of said foreclosure, order of sale, and sale of said property to the intervener, and confirmation

thereof by the court and said deed to said property to intervener. That said W. B. Sands appeared in said foreclosure action by motion, as successor in interest of the defendant W. R. Hensen, to set aside the judgment and annul the sale thereunder; that said motion was submitted on briefs by said W. B. Sands as counsel therein, and after due consideration of the points discussed by counsel for and against said motion, statutes and authorities cited and all pertinent matters, the court being duly advised and good cause appearing therefor, the said motion was on May 1st, A. D. 1930, by said court overruled and denied, and due notice of said decision, as intervener is informed and believed, was sent to said W. B. Sands on May 20th, A. D. 1930, by C. R. Garlow, Clerk of said court.''

To be sure, the complaint does not allege when Sands became conversant with the foreclosure action, unless that fact appears from the allegation of the filing of a *lis pendens*. The complaint may have been subject to a motion to make it more definite and certain, and perhaps to a special demurrer. It was not attacked in any such manner; not even was there a general demurrer filed before answer, but the sufficiency of the complaint was questioned for the first time by objecting to the introduction of evidence. Instead of attacking the complaint on the ground here considered, defendant Sands in his answer made denial of the above-quoted paragraph III, as follows: ''The defendant answering paragraph III of the complaint in intervention, denies that he was fully, or at all, conversant with the action of foreclosure in case No. 274 in the United States Court, or that he knew of said foreclosure, order of sale or sale of said property until after, and not before, the entry of decree in said action, the sale thereunder and the confirmation thereof by the court, but admits the other allegations of said paragraph III.'' Thus the issue was tendered as to when Sands had notice of the pendency of that action, and the proof showed that a *lis pendens* in due form was filed on May 26, 1926, which was the date on which the foreclosure action was commenced. This constituted constructive notice to Sands and to everyone from the date of

the commencement of that action (sec. 9109, Rev. Codes 1921), and, since the other defendants admittedly claim through Sands, and since they acquired their rights subsequent to the decree of the federal court, it was immaterial as to whether the complaint alleged notice to them. They could not, under the circumstances here, acquire any greater rights in the property than Sands had. Furthermore, it was not necessary for plaintiff to plead in his complaint the infirmity of the claims of the various defendants. It was sufficient to allege that defendants each claimed some interest in the property, and that they be required to set it forth. The complaint was not defective as to any defendant for failure to allege notice of the pendency of the foreclosure proceedings.

It is further contended that the complaint is insufficient for failure to allege that the foreclosure decree has become a final decision within the meaning of section 9821, Revised Codes of 1921. As before stated, intervener was not obliged to allege facts showing the invalidity or inferiority of the claims of defendants. If the decree had not become final, it was incumbent upon defendants to so allege in their answers. No such allegations are made by any of them, and neither did any of them offer any evidence that such was the case.

In his petition in intervention, intervener alleged that he is the owner of the property described in the complaint of Thomson and of other property formerly owned by the Mackton Coal Company, without describing it. Sargent simply claimed the right of possession of 80 acres by virtue of a lease from Sands which covered 80 acres not described in the Thomson complaint. It is contended that as to him the judgment cannot stand. The contention is without merit. The 80 acres were formerly owned by the Mackton Coal Company, and the rights to those 80 acres were properly adjudicated to avoid a multiplicity of suits. Moreover, no objection was made in the trial court by Sargent on this ground, and hence he is in no position to complain here.

It is suggested that the complaint in the federal court was insufficient because it did not allege that the statutory

542

steps were taken to authorize a mortgage by the Mackton Coal Company of all its property. Section 6004, Revised Codes 1921, provides two methods by which a corporation may mortgage or dispose of all of its property. One is by vote of two-thirds of the whole number of stockholders at a meeting called for that purpose, and the other is by adopting a by-law empowering the board of directors to do so. The complaint in the federal court alleged: ''That heretofore and prior to the third day of January, 1916, and prior to the execution and delivery of the mortgage and trust deed hereinafter mentioned, the said, The Mackton Coal Company being thereunto duly authorized by the laws of the State of Montana and its articles of incorporation, by and pursuant of resolutions duly adopted by its stockholders and its board of directors, and for its due and proper corporate purposes duly authorize the issue and delivery of its certain first mortgage six per cent bonds to an amount not exceeding in the aggregate the principal sum of One Hundred Thousand ($100,000) Dollars, such bonds to be dated January 3d, 1916,'' etc. Also it alleged that ''in pursuance to the aforesaid purpose, the Mackton Coal Company pursuant to due and lawful authority and to due corporate action of its stockholders and its board of directors, and in order to secure payment of the principal and interest of said bonds, and to secure the performance and observance of all of the covenants and conditions contained in its mortgage hereinafter mentioned, duly made and executed under its corporate seal and delivered to the Stanton Trust & Savings Bank, a corporation of Great Falls, Montana, its · mortgage and trust deed known as its First Mortgage and Trust Deed, dated January 3d, 1916, wherein and whereby the said, The Mackton Coal Company did grant, bargain and sell and convey unto the said Stanton Trust & Savings Bank, a corporation, as trustee, its successors and assigns, the property described in said mortgage as follows:''

The complaint was amply sufficient, and in the absence of the evidence introduced in the federal court, we assume that

there was sufficient evidence introduced to sustain the allegations.

The judgment awards the intervenor costs against all the defendants and Thomson. Since Wedeking filed a disclaimer of any interest in the property, he cannot in justice be held liable for any of the costs. The judgment should be modified as to him, so as to relieve him of the payment of any costs.

Contention is made that at the time the judgment of foreclosure was entered in the federal court the corporate life of the Mackton Coal Company had expired. It is sufficient to say of this that there is nothing in the record from which we can say that the life of the corporation had expired. It does appear that the corporation was organized in August, 1906, and under the laws of 1907, which limited the existence of corporations to twenty years. (Sec. 3818, Rev. Codes 1907.) But whether the corporate life was extended under section 3826 of the same Code, does not appear. The point does not seem to have been raised in the lower court, and no evidence on the point appears in the record.

The last contention is that Lescher did not obtain title to the property involved because he did not pay cash for it, but bid $20,000 worth of Mackton Coal Company bonds for the property. It appears from the record that $100,000 worth of bonds were issued by the Mackton Coal Company and were outstanding in the hands of bona fide holders at the time of the foreclosure proceedings. In the complaint in the foreclosure action it was alleged that the property mortgaged was "for the equal and proportionate benefit and security of all holders of the bonds and coupons duly issued * * * without any preference, priority or distinction, as to lien or otherwise, of one bond over any other bond." It was further alleged: "That in order to properly protect all of said bond holders, either known or unknown at the present time, it will be necessary for this Honorable Court in any decree of foreclosure to make provisions for the purchase of said properties covered by the said Mortgage Trust Deed, either by this said trustee or by a committee or person nominated by

the holders of a majority of said bonds; said purchase to be made for the benefit of all of the holders of said bonds, and that for the best interests of said bond holders, said decree should further provide that the said purchaser be permitted in lieu of a cash bid, to give credit upon the judgment rendered herein for the amount bid at said sale."

The prayer of the complaint, among other things, was: "That at said sale, either the plaintiff herein as trustee, or a person appointed by a majority of the bond holders, in amount, be authorized to bid the said property in for the benefit of all of the said bond holders, and hold the title to said properties for the benefit of all of the bond holders, and that in payment of said bid, that a receipt may be given to the marshal holding said sale, in lieu of cash, which said receipt shall be endorsed, upon judgment rendered herein."

The decree of foreclosure found that Lescher as receiver of the State Bank of Stockett, Montana, was the owner of 400 bonds of the par value of $100 each, and 4 bonds of the par value of $500 each; that 80 bonds of the par value of $500 each were owned by unknown parties. It further recited that the suit was instituted "in behalf of the holders of all of said bonds secured by said mortgage trust deed, and that the right, title, interest and equities of the bond holders who have not proven their bonds herein to be fully secured and preserved by this decree herein without requiring the owners of said bonds to be made parties." The decree, after providing for a sale of the property mortgaged, further provided that it is "ordered, adjudged and decreed * * * that at such sale, the complainant, or any bond holder, may become the purchaser thereof, and that the said sale under this decree shall be at public auction to the highest bidder, for cash, or bonds of the Mackton Coal Company as hereinafter provided." It further provided that out of the purchase money the officer making the sale shall apply it as follows: (1) For costs of suit; (2) for counsel fees; (3) to the payment of the 600 bonds secured by the mortgage; and if the proceeds were not sufficient to pay the bonds in full, then, after paying costs and attorney fees, the proceeds shall be prorated among

the bondholders, and that "upon confirmation of said sale by the court, the said bonds shall be received in payment of the bid of said purchaser, at their face value." It is further provided in the decree that "it is the intent and meaning of this decree that the purchaser shall at said sale receive an absolute title to the property purchased upon confirmation by this court."

The marshal's return of sale recites that the officer making the sale "exposed the said premises for sale in a single unit at public auction to the highest bidder for lawful money of the United States, or in bonds of the Mackton Coal Company, a corporation, when H. G. Lescher, trustee and a bond holder, being the highest bidder therefor, the said premises were struck off by him to the said H. G. Lescher, trustee and a bond holder for the sum of Twenty Thousand ($20,000.00) Dollars in bonds of The Mackton Coal Company, a corporation, which was the whole price bid, and which I acknowledge to have received."

The decree of confirmation in part states: "It is hereby ordered, adjudged and decreed that the report of Curt Dennis, Deputy U. S. Marshal for the District of Montana and the special officer appointed to make foreclosure sale in above entitled action, and the said sale be, and the same are, in all respects confirmed; and the said Curt Dennis, Deputy U. S. Marshal appointed herein, upon receipt of $20,000.00 in bonds of the Mackton Coal Company from H. G. Lescher, trustee, is hereby directed to issue forthwith a deed unto the said H. G. Lescher, trustee, to the property, rights, franchises and privileges, rolling stock formerly owned by the Mackton Coal Company and which was sold by the said Curt Dennis under date February 25th, 1928, unto said H. G. Lescher, trustee."

Lescher was a witness in this case, but was not interrogated as to whom he represented as trustee. It seems fairly inferable from the foreclosure proceedings that he is holding the property as trustee for all the bondholders. Were it otherwise, proof should have been adduced to show it, or objections

should have been made to the confirmation of the sale in the federal court.

The relief sought by the complaint was, in effect, to permit the mortgagee to become the purchaser in behalf of the bondholders; that is to say, a bondholder could bid in the property for the benefit of all the bondholders. (Jones on Mortgages, 8th ed., sec. 2101.) Unless the mortgagor disaffirms the sale, it is valid, and the purchaser acquires the same title against third parties as does any other purchaser. (Id., sec. 2142.) If the sale was made to one not authorized to bid on behalf of all the bondholders, it would not render the sale void, but voidable only at the instance of the judgment debtor (41 C. J. 979, note 4, 980, note 22), or, possibly, at the instance of bondholders adversely affected. If third persons have the right to attack the sale, it cannot be done collaterally, as here. (Jones on Mortgages, 8th ed., sec. 2137.)

The judgment is affirmed, except as to Wedeking. As to him the judgment should be modified to relieve him of the payment of the costs.

Rehearing denied March 14, 1935.