SMITH ET AL., APPELLANTS, *v.* JACK POT MINING CO., RESPONDENT.

(No. 7,930.)

(Submitted November 15, 1939. Decided December 9, 1939.)

[97 Pac. (2d) 368.]

*Mr. E. F. Bunker, Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Appellants, submitted a brief; *Mr. Bunker* and *Mr. Rankin* argued the cause orally.

*Mr. W. S. Hartman,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from a judgment of the district court of Gallatin county, after a demurrer to the second amended complaint had been sustained without leave to plead further. The original complaint does not appear in the transcript.

On September 13, 1937, an amended complaint was filed, in which the appellants appeared as plaintiffs, and the respondent, together with five individuals who were directors of the respondent corporation, were the defendants. The action was for damages for breach of a contract set out in the amended complaint. General and special demurrers were interposed to that com-

plaint, which were sustained in all particulars. A second amended complaint was filed on January 24, 1938, to which again general and special demurrers were interposed. The second amended complaint named only the respondent corporation as defendant. Judgment was entered for the individual directors on February 21, 1938, for the reason that they were not named as defendants in the second amended complaint. The court on April 14, 1938, sustained the demurrer of the respondent Jack Pot Mining Company in certain respects and overruled it in others. The general demurrer upon the ground that the second amended complaint did not state facts sufficient to constitute a cause of action was sustained on April 14. On April 18 judgment was rendered in favor of the defendant and against the plaintiffs, in which it was recited that plaintiffs had not asked leave to amend the second amended complaint, "and said plaintiffs not being entitled to such leave" and "defendant is entitled to a judgment on the merits pursuant to the sustaining of said demurrer."

The individual defendants were included as respondents in the notice of appeal and in the title of the cause in this court, but are clearly not necessary or proper parties, since no appeal was ever taken from the earlier judgment entered in their favor. The appeal is therefore hereby dismissed as to them, on the court's own motion; and they are entitled to their costs, if any such were separately incurred by them.

The sole specification of error argued by appellants is based on the action of the district court in sustaining the general demurrer and refusing the appellants leave to amend further.

The respondent filed with its brief a motion to dismiss the appeal on several grounds. For convenience we will consider first the specification of error assigned by the appellants.

The contract pleaded and relied upon in the second amended complaint is as follows:

"Agreement.

"This Agreement made and entered into this 6th day of July, 1937, by and between the Jackpot Mining Company, party

of the 1st part, a corporation, organized, existing and doing business under and by virtue of the laws of the State of Montana with its principal place of business at the City of Bozeman, in the County of Gallatin, in said State, hereinafter called the Company, and I. Foster Smith and H. L. Pearl, of the City of Denver, Colorado, hereinafter called the party of the 2nd part.

"That the Company has this day agreed and does hereby grant the party of the 2nd part the right to purchase all of the capital stock of the Jackpot Mining Company, together with all rights for exclusive management, control and ownership of all properties of said Jackpot Mining Company, more particularly described as follows:

"The Boaz Quartz Lode Mining Claim patented, and the Golden Treasure Quartz Lode Mining Claim, unpatented, also Jack Pot Quartz Loade Mining Claim, being adjacent claims and located in Lower Hot Springs (unorganized) Mining District in Madison County, Montana, in accordance with the provisions hereinafter set forth.

"The Company agrees to sell and hereby grants to the party of the 2nd part the rights to purchase the capital stock and said mining properties, together with the improvements and equipment at the date of said contract of purchase and sale at and for the purchase price of $125,000.00, payable as follows:

"$25,000.00 on or before July 10th, 1937; $5,000.00 on or before September 10, 1937; $10,000.00 on or before October 10, 1937; $10,000.00 on or before November 10, 1937; $10,000.00 on or before December 10, 1937; $10,000.00 on or before January 10, 1938; $10,000.00 on or before February 10, 1938; $10,000.00 on or before March 10, 1938; $10,000.00 on or before April 10, 1938; $10,000.00 on or before May 10, 1938; $10,000.00 on or before June, 1938; and $5,000.00 on or before July 10, 1938. The purchaser to apply 25% of the net smelter returns to be deducted by the smelter on the said purchase price and to be credited on the purchase price as due by the Company as the same is received. The Company is to retain the ore in bins and in

shipment and loose on the dumps, and to have ten days to remove the same. No interest is to be paid on deferred payments. The party of the 2nd part is to have until August 10, 1937, to purchase the properties and stock of the Jack Pot Mining Company, subject to the following condition. The party of the 1st part has agreed in writing with one W. E. Brodie that if the party of the 2nd part or their assigns does not complete the purchase of the Jack Pot Mining Company stock and properties by July 10, 1937, that said Brodie shall have until close of business on July 12, 1937, to purchase above described properties and stock. If no sale has been completed by close of business on July 12, 1937, this contract is to be construed as being in force and good standing until August 10, 1937. Contract of sale is to provide that the purchaser is to expend a minimum sum of $1,500.00 per month in development work on said mine, said development work to be planned and executed in good minerlike manner and to be so planned and executed as not to damage or decrease the value of said mine.

"Purchaser is to have complete charge of the property upon payment of the first payment.

"Representatives of Jack Pot Mining Company to have the privilege of inspecting the working of the mine at all reasonable times.

"It is further agreed that the Company is to have the opportunity to investigate and determine the financial ability of any proposed purchaser and decide for itself whether or not it feels the proposed purchaser has sufficient financial ability to carry out this contract.

"Time is to be of the essence of said contract of purchase and sale and on failure to make full purchase payments in manner and form as hereinabove provided, the contract is to be forfeited automatically and the payments theretofore made to be retained by the Company. The Company is to furnish abstract of title showing merchantable title to said property, and on full payment, to execute and deliver warranty deed for the property and its appurtenances and equipment.

"In Witness Whereof, pursuant to a resolution of its Board of Directors heretofore unanimously adopted at a meeting thereof, the said Company has caused its name to be affixed by its President by said resolution thereunto duly authorized, and affixed its corporate seal thereto, and the party of the second part has hereunto set his hand and seal the day and year first above written.

JACK POT MINING COMPANY
By E. M. BROOKE,

" [Corporate Seal.] President.

Attest G. R. POWERS,
Secretary.

"In Triplicate. I. FOSTER SMITH
H. L. PEARL.
Party of the 2nd part."

A casual reading of the contract would indicate that there is some ambiguity in it; but the only material ambiguity is, to our minds, as to whether the contract is one whereby the appellants were to secure purchasers for the property, or one whereby the appellants were to purchase the property themselves. By the complaint the first theory seems to be advanced by the appellants, and we think the contract is susceptible to that interpretation. The appellants set out in their amended complaint that they secured purchasers and that the purchasers were approved by the respondent. In any event, we think that the agreement set out is sufficiently clear and unambiguous that it constituted an enforceable contract between the parties upon the one theory or upon the other, and that it was error on the part of the court below to sustain the general demurrer and to refuse to plaintiffs the right to amend further.

Performance of the terms of the agreement by appellants and breach thereof on the part of the respondent and resultant damage are alleged. "The rule is well established in this jurisdiction, both by the statute and the numerous decisions of this court, that, if upon the facts stated, from any point of view, the plaintiff is entitled to relief, the complaint will be sustained." (*Hicks* v. *Rupp*, 49 Mont. 40, 140 Pac. 97, 99. See,

also, *Simonsen* v. *Barth,* 64 Mont. 95, 208 Pac. 938, and the cases therein cited.)

The contract set out is sufficiently clear that a cause of action may be predicated upon it. Since that is true, it was clearly error to sustain the general demurrer without leave to plead further. The object of the contract is not wholly unascertainable, and so long as it is not, the agreement is not void. (*McDonald* v. *McNinch,* 63 Mont. 308, 206 Pac. 1096.)

There is some argument that the contract is so uncertain because of the provision relative to a possible sale to one Brodie as to make the agreement unintelligible and void. The provisions stated that in the event the appellants did not complete performance under the contract prior to a certain date included in the life of the contract, Brodie was to have a two-day period in which he might purchase the property involved. It then provided that in the event he did not exercise his option, appellants' rights should be the same as though there had been no period in which Brodie might purchase. The provision is clear and unambiguous. Its simple effect is that appellants might perform any time prior to the accrual of Brodie's right, or any time after the expiration of his rights, until a date fixed for the termination of the agreement. (*McDonald* v. *McNinch,* supra.)

It is argued the agreement is unenforceable because it recites no consideration. ''Except when required by some statute, the consideration for a contract need not appear on its face, but may be proved by parol or inferred from the terms of the agreement.'' (17 C. J. S., Contracts, section 73, p. 424; *Ellison* v. *Young,* 71 Colo. 385, 206 Pac. 802.) Even though the contract be treated as a unilateral one, there are allegations of performance in the complaint which, if proved, would be sufficient to supply the consideration.

It is urged that the contract is void because it provides for the sale of the capital stock of the corporation. There is also a provision for the sale of all of the property of the corporation. The contract, then, has two objects: the first, the sale of the stock and, the second, the sale of the property. The

complaint alleges that the contract was entered into by the corporation by lawful authority. This is a sufficient allegation in the complaint of compliance with section 6004, Revised Codes. (*Thomson* v. *Nygaard,* 98 Mont. 529, 41 Pac. (2d) 1.) Whether the provision as to the sale of the stock could be enforced or not, the one as to the sale of the property certainly could be if the allegation as to compliance with section 6004 is proven. The contract is severable and as to the property, at least, the obligation is binding. (See *Herrin* v. *Herrin,* 103 Mont. 469, 63 Pac. (2d) 137.)

Ordinarily, for the guidance of the court below, we should consider the matter of the special demurrer. However, here the appellants do not specify the sustaining of the special demurrer as error. In their brief they state the matter thus: "In so far as this appeal is concerned, it would seem that the only material question is whether or not the complaint states a cause of action on any theory, because the general demurrer was sustained." Under the circumstances, then, we shall not discuss the special demurrer since it is not argued that it was improperly sustained. We take it, then, that the appellants will, if they prevail on this appeal, submit an amended complaint to meet the objections sustained in the special demurrer, and there would be, therefore, no point in our considering in detail the special demurrer.

Respondent raises several points under its motion to dismiss the appeal. It first states that the appeal should be dismissed for the reason that appellants have paid the judgment of costs entered as a part of the judgment of April 18. This award was in the sum of $5.00. It is true that this amount was delivered to the clerk of the district court prior to the filing of the appeal bond. But at the time this amount was paid to the clerk instructions were given to him to hold the sum until the appeal be determined. It appears that this sum is still in the possession of the clerk. From the circumstances surrounding the payment of this sum to the clerk, and in view of the instructions given to him, it is clear that this delivery of the amount of the judgment to the clerk was intended only as a

deposit, and has been treated by the clerk and the parties as such, and that it was not such a payment as would constitute the satisfaction of a judgment which would require dismissal of the appeal.

The second reason given for the dismissal of the appeal is that it is impossible to tell from which judgment the appeal is taken. As has been noted in the statement of facts, upon the filing of the second amended complaint, in which appellants did not include the individual directors as defendants, a judgment in their favor was entered and the action dismissed as to them. The judgment of April 18 was in favor of the respondent alone, since the directors were no longer parties defendant. In the notice of appeal the language is that the appeal is from the judgment rendered "on the 18th day of April, 1938, in favor of the defendants and against the plaintiffs." Respondent says that, since a judgment had been entered for the other defendants in the original complaint on an earlier date, and since there was but one defendant on April 18, the use of the plural in the notice of appeal would seem to indicate that it is the earlier judgment dismissing the cause as to the directors that is here appealed from, or at least that it is difficult to tell from the notice which judgment the appellants have in mind. There can be no possible confusion on this score. But one judgment involving these parties was filed on April 18. Neither respondent nor anyone else could have any reason to believe that any other judgment was appealed from. No sufficient merit lies in this argument to warrant any consideration by this court.

A further ground for the motion to dismiss the appeal is that subsequent to the judgment of April 18, and on the date the $5.00 were paid to the clerk of the court, appellants filed an action in Madison county seeking reformation and specific performance of the contract in question. Respondent argues that that action constituted an abandonment of this suit. With this we do not agree. There was no express abandonment, nor may any abandonment be implied from the filing of the suit for reformation and specific performance. Although

the two actions arise out of the same contract, they seek different remedies. This suit seeks damages for breach of the contract, while the Madison county suit seeks specific performance of it. There is nothing from the circumstances that indicates an intention on the part of the appellants to abandon this action.

By analogy, the following language from volume 2 of the Restatement of the Law of Contracts, page 715, applies: "The bringing of a suit either for specific performance or for compensation in money is not such an election of the remedy sued for as to operate as a bar to a later suit * * * asking for the other remedy with respect to the same breach." Further the authority says in justification of this rule: "The fact that justice often requires these remedies to be used supplementary to each other affords an additional reason for the rule." The filing of the Madison county suit does not warrant dismissal of this appeal.

Some argument is made that the appeal is not in good faith and is for the purpose of delay only. An examination of the record and the briefs indicates otherwise.

The general demurrer should have been overruled and the appellants should have been given leave to amend to meet the objections raised by the special demurrer. The judgment is reversed and the cause remanded for further proceedings in accordance with what is said herein.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN · and ARNOLD concur.

Rehearing denied January 3, 1940.