M. O. FLOWERS, SECRETARY OF STATE, ET AL V.
PECOS RIVER RAILROAD COMPANY.

No. 7874. Decided November 12, 1941.
Rehearing overruled December 3, 1941.
(156 S. W., 2d Series, 260.)

*Gerald C. Mann*, Attorney General, *Geo. W. Barcus, Cecil C. Cammack* and *Ocie Speer*, Assistants Attorney General, for plaintiff in error.

Upon the agreed statement of facts, upon which the case was tried, the fee demanded by the secretary of state of $525.00 for the renewal of the railroad company's charter was the lawful and correct fee for such service, and it was error for the court to render judgment for the remittance of $325.00, which the railroad claims as having been paid under protest. Chicago, B. & Q. R. Co. v. Doyle, 258 Ill. 624, 102 N. E. 260, 108 A. L. R. 70; 13 Am. Jur., 229.

*Claude Pollard*, of Austin, *Terry, Cavin & Mills*, and *Ballinger Mills, Jr.*, of Galveston, for defendants in error.

There are specific statutes applicable to the renewal of charters of railroads and as to the fees to be paid by them for such services, and Article 1315 a and b, under which this suit was brought have no application of such fees. Townsend v. Terrell, 118 Texas 463, 16 S. W. (2d) 1063; Lasater v. Lopez, 110 Texas 179, 217 S. W. 373; 39 Tex. Jur., 226.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the County Court of Travis County, Texas, by the Pecos River Railroad Company, hereinafter called the Railroad, against M. O. Flowers, Secretary of State, and other named State officials, hereinafter called the Secretary, to recover the sum of $325.00. Trial in the county court on an agreed statement of facts resulted in a judgment for the Railroad. On appeal by the Secretary to the Austin Court of Civil Appeals, the judgment of the county court was affirmed. 152 S. W. (2d) 502. The case is before the Supreme Court on writ of error granted on the application of M. O. Flowers, Secretary of State, et al. Though this is a county court case, we assume jurisdiction thereof under Section 1 of Article 1821, R. C. S. 1925, as amended, because it involves the construction of certain statutes of this State, as will later appear.

As already stated, the facts of this case are agreed on. They are very simple. They are as follows:

On March 1, 1890, the original charter of the Railroad was filed in the office of the Secretary of State of this State. Under such charter the Railroad was duly incorporated for a period of 50 years from and after such date.

On February 27, 1940, a renewal of the Railroad charter was filed in the office of the Secretary of State. On and before the filing of such renewal the authorized capital stock of the Railroad was $750,000.00. Under the renewal the capital stock is the same that it was under the original charter. Simply stated, all that the renewal did was to renew the Railroad's corporate existence for 50 years from the date of the filing of the renewal resolution.

On February 27, 1940, when the renewal of the Railroad's charter was presented to the Secretary, the Railroad tendered to such official the sum of $200.00, contending that that sum was the full amount due by it as a filing fee. The Secretary refused to accept $200.00 as the correct, legal filing fee, and demanded a filing fee of $525.00 before he would file such charter renewal. The Railroad then paid the Secretary of State the sum demanded by him,—$525.00. Of this sum $200.00 was paid unconditionally, and without protest, but the balance, $325.00, was paid under protest; and this suit was instituted as provided by Acts of 1933, 43d Legislature, p. 637, Chap. 214, carried as Article 7057b, Vernon's Texas Statutes 1936.

Simply stated, the Railroad instituted this suit to recover the sum of $325.00, contending that under our pertinent statute it was due to pay a filing fee of $200.00, instead of $525.00, as demanded by the Secretary of State.

Before proceeding further, we deem it expedient to quote certain statutes which we consider proper to discuss and construe in deciding this case. Such statutes are Articles 3914, 6267, and 6268, R. C. S. 1925; Article 1315a, Vernon's Texas Statutes, Acts 1937, 45th Leg., p. 368, chap. 179; Article 1315b, Vernon's Texas Statutes, Acts 1937, 45th Leg., 1st C. S., p. 1773, chap. 14. Such statutes are as follows:

"Art. 3914. The Secretary of State is authorized and required to charge for the use of the State the following other fees:

"Upon filing each charter, amendment, or supplement thereto of a channel and dock, railroad, magnetic telegraph line, street railway or express corporation, a filing fee of Two Hundred ($200.00) Dollars, provided, that if the authorized capital stock exceeds One Hundred Thousand ($100,000.00) Dollars, an additional filing fee of Fifty Cents for each One Thousand ($1,000.00) Dollars authorized capital stock or fractional part thereof, after the first One Hundred Thousand ($100,000.00) Dollars, shall be paid.

\* \* \* \* \* \*

"Art. 6267. No railroad corporation shall be formed to continue more than fifty years, but such corporation may be renewed from time to time for periods not longer than fifty years."

"Art. 6268. The manner of renewing a railroad corporation which has expired by lapse of time shall be as follows:

"1. By a resolution in writing adopted by a majority of three-fourths of the stockholders of the company at a regular meeting of the stockholders, specifying the period of time for which the corporation is renewed.

"2. Those desiring a renewal of the corporation shall purchase the stock of those opposed thereto at its current value.

"3. The resolution, when adopted, shall be certified to by the president of the company; and he shall state in his certificate thereto that it was adopted by a majority vote of three-fourths of all the stockholders of said company at a regular

meeting of such stockholders, and that the stockholders desiring such renewal have purchased the stock of those who oppose such renewal, and such certificate shall be attested by the secretary of the company under the seal of the company.

"4. Said resolution and certificate shall be filed and recorded in the office of the Secretary of State, and the renewal of said corporation shall date from said filing."

"Article 1315 (a). Subject to a finding by the Secretary of State as hereinafter provided, any private corporation organized or incorporated for any purpose or purposes authorized under this Title, at any time within ten (10) years prior to the expiration of its charter, or any extension thereof, may extend such charter and the corporate existence of such corporation for an additional period of not to exceed fifty (50) years from the expiration date of the original charter, or any extension thereof, with all the privileges, powers, immunities, right of succession by its corporate name, and rights of property, real and personal, exercised and held by it at such expiration date, to the same intents and purposes as upon original incorporation. The manner of extending any such charter shall be by a resolution in writing, adopted at annual or special meeting of stockholders called for that purpose by stockholders holding a majority of the shares of capital stock of such corporation then outstanding, such resolution to specify the period of time for which the charter is extended, and a copy of such resolution, duly certified by the secretary of the corporation, under the corporate seal, shall be filed and recorded in the office of the Secretary of State. Upon the adoption of such resolution and the filing of a certified copy thereof with the Secretary of State, together with payment of the filing fee herein prescribed, the charter and corporate existence of such corporation may be extended for the additional period of time recited in such resolution. The filing fee to be paid for any such extension of a charter shall be such fee as said corporation would be required under the Statutes of Texas to pay in the event it was then applying for a new charter instead of extending its then existing charter.

"Such extensions, however, many be made only in instances where the Secretary of State shall have found, after proper investigation, that such corporation is solvent and its capital unimpaired.

"Sec. 2. The fact that there is now no General Law pro-

viding for the extension of corporate charters, and the fact that securities of Texas corporations are being discriminated against because investors have questioned the validity of any such securities where the maturity date thereof was subsequent to the expiration date of the charter of the corporation issuing such securities, and the fact that this operates as a handicap to the fair and proper financing of Texas corporations create an emergency and an imperative public necessity that the Constitutional Rule, requiring bills to be read on three several days, be suspended, and that said Rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."

"Article 1315(b). The provisions of Article 1315(a) shall extend to and include all private corporations incorporated under the general laws of Texas. The period of ten (10) years prior to the expiration of the charter of any extension thereof referred to in Article 1315(a) shall include the period of time during which such corporation may have continued its existence under the provisions of Article 1389 of the Revised Civil Statutes of 1925.

"Sec. 2. The fact that it is not clear whether the provisions of Article 1315(a) of the Civil Statutes of Texas passed in 1937 include all private corporations incorporated under the general laws of Texas, or whether the period of ten (10) years prior to the expiration of the charter or any extension thereof referred to in Article 1315(a) includes the period of time during which such corporation may have continued its existence under the provisions of Article 1389 of the Revised Civil Statutes of Texas, and the fact that securities of Texas corporations are being discriminated against because investors have questioned the validity of any such securities where the maturity date thereof was subsequent to the expiration date of the charter of the corporation issuing such securities, and the fact that this operates as a handicap to the fair and proper financing of Texas corporations create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days, be suspended, and that said Rule be suspended and that this Act take effect and be in force from and after its passage and it is so enacted."

It will be noted that under Article 6267, supra, railroad corporations can be formed or chartered for not more than fifty years, but such corporations may be renewed from time to time for periods not longer than fifty years. It will be fur-

ther noted that Article 6268, supra, prescribes the manner or method to be followed in renewing railroad charters. In such statute it is specifically provided:

1. That the renewal shall be by resolution in writing adopted by a majority of three-fourths of the stockholders of the company, etc.

2. That those desiring renewal of the corporation shall purchase the stock of those opposed thereto, at its current value.

3. That the resolution, when adopted, shall be certified by the president of the company and shall state that it was adopted by a majority of three-fourths of the stockholders of the company, and that the stockholders desiring such renewal have purchased the stock of those who are opposed, etc.

4. It is required that the certificate shall be filed and recorded in the office of the Secretary of State.

Articles 6267 and 6268, supra, are contained in Title 112 of our Civil Statutes of 1925. This title relates solely to railroads. Such statutes have been the law of this State for many years. In fact, they appear as Articles 4106 and 4107, R. C. S. of Texas 1879, and we gather that they were first enacted in 1876.

Prior to 1937 there was no statute in force in this State providing for the renewal or extension of charters of private corporations, except Article 6267 and 6268, supra. As already shown, the articles just named refer solely to railroad corporations. In 1937 the 45th Legislature, Regular Session, enacted Article 1315 (a). Article 1315 (b) was enacted at the First Called Session of the 45th Legislature. Article 1315 (a) provides, in effect, that all private corporations organized or incorporated under Title 32 of our civil statutes may extend their charters for an additional period of not to exceed fifty years from the expiration date of their original charters, or any extension thereof. It is provided in this Article that the manner of extending such charter shall be by resolution in writing adopted at annual or special meeting of the stockholders, called for that purpose by stockholders holding a majority of the shares of capital stock of such corporation then outstanding, etc. Finally, it is provided that the filing fee to be paid for any such extension of the charter shall be such fee as such corporation would be required under the statute of Texas to pay in the event it was then applying for a new

charter instead of extending its then existing charter. The emergency clause of the Act which enacted Article 1315(a) recites that "The fact that there is now no General Law providing for the extension of corporate charters, * * * create an emergency * * *."

Article 1315(b) was enacted in 1937 at the First Called Session of the 45th Legislature. As already shown, Article 1315(a) confined the privilege of renewing or extending the charters of private corporations to those organized or incorporated under Title 32 of our Civil Statutes. Article 1315(b) simply extends this privilege to all corporations organized under the general laws of Texas. The emergency clause of the Act which contains Article 1315(b) recites that "The fact that it is not clear whether the provisions of Article 1315(a) of the Civil Statutes of Texas passed in 1937 include all private corporations incorporated under the general laws of Texas, * * * create an emergency * * *."

As we understand his brief and argument, the Attorney General contends that Article 1315(a) and 1315(b), supra, construed together, have operated to repeal Article 6268, supra. The Attorney General then contends that because Article 1315(a) expressly provides that the filing fee for extending corporate charters shall be the same as for filing new charters, the fee in this instance is the same as though the Railroad had applied for a new charter with an authorized capital stock of $750,000.00. The Railroad contends that Articles 1315(a) and 1315(b) have not operated to affect or repeal Article 6268, and that the filing fee here involved must be fixed or computed in this instance without reference to Articles 1315(a) and 1315(b).

██ We are in accord with the contention of the Railroad as above indicated. Simply stated, we are of the opinion that Articles 1315(a) and 1315(b) have not in any way amended or repealed Article 6268. This is because of the rule that the enactment of a general law does not ordinarily operate as a repeal of a particular or special law, by implication, and this is true although both laws relate to the same subject matter. In such instances both laws are permitted to stand, and the general law is applicable to all cases not embraced in the specific act. Stated in another way, the particular act is construed as the exception to the general law. 39 Tex. Jur., p. 149, sec. 81; Townsend v. Terrell, 118 Texas 463, 16 S. W. (2d)

1063; City of Laredo v. Martin, 52 Texas 548; Ellis v. Batts, 26 Texas 703; Cole v. State, 106 Texas 472, 170 S. W. 1036. In this connecton, it is also the general rule that statutes relating to the renewal or extension of corporate charters generally, are not construed as applicable to a particular type of corporation with regard to which particular or specific legislation has been had. Chicago B. & Q. Ry. Co. v. Doyle, 258 Ill. 624, 102 N. E. 260; State ex rel. Equality Sav. & Bldg. Assn. v. Brown, 334 Mo. 781, 68 S. W. (2d) 55; State ex rel. Cascade Bank v. Yoder, 39 Mont. 202, 103 Pac. 499; 13 Amer. Jur., p. 228, sec. 85; Pecos & N. T. Ry. Co. v. Malone, 222 S. W. 217; Luby v. Bell, 15 S. W. (2d) 106; San Antonio & A. P. Ry. Co. v. State, 128 Texas 33, 95 S. W. (2d) 680. At this point we call particular attention to the fact that Article 6268, providing the method of renewing railroad charters, materially differs in its requirements from Article 1315(a), supra. Still discussing the question as to whether Articles 1315(a) and 1315(b)`have repealed or amended Article 6268, we call attention to the fact that the emergency clauses to these Articles show that the Legislature intended to legislate where there then existed no legislation.

From what we have said, it is evident that this case must be decided without reference to Articles 1315(a) and 1315(b).

■ When we come to ascertain what fee was due for filing this extension to the Railroad's charter, it is too evident to admit of argument that we are relegated to Article 3914 of our Civil Statutes, supra. We think the Railroad concedes this when it admits that it owes $200.00, the minimum filing fee provided by such statute. To our minds, under such statute, the Railroad was, and is, liable for the full amount demanded by the Secretary of State,—$525.00. Under the plain provisions of Article 3914, supra, the filing fee for filing the charter of a railroad corporation is $200.00, plus 50c for each $1,000.00 authorized capital stock, or fractional part thereof, after the first $100,000.00. A simple mathematical calculation will demonstrate that for filing the charter of a $750,000.00 railroad corporation, the filing fee would be $525.00. In this instance the Railroad filed a renewal of its corporate charter for fifty years. We think that such renewal was for the filing of a charter within the meaning of Article 3914.

The Railroad contends that the case of St. Louis S. W. Ry. Co. of Texas v. Tod, 94 Texas 632, 64 S. W. 778, is decisive

authority in its favor of its contention that it is only liable for the fee of $200.00 tendered by it in this instance. We shall not extend this opinion by attempting a complete analysis of the Tod opinion. It is sufficient to say that it deals with an amendment to a railroad corporate charter. It does not deal with what amounts to a new charter, as does this case.

The judgment of the Court of Civil Appeals and county courts are both reversed, and judgment is here rendered for the plaintiffs in error.

Opinion delivered November 12, 1941.

### ON MOTION FOR REHEARING.

This case is before us on motion for rehearing, filed by the Railroad. In our original opinion we held:

"In this instance the Railroad filed a renewal of its corporate charter for fifty years. We think that such renewal was the filing of a charter within the meaning of Article 3914."

In its motion for rehearing the Railroad contends that it is a well-established rule of law that the renewal of a corporate charter constitutes simply a continuation of the old corporation, rather than the creation of a new one. It is then contended that our ruling above quoted questions the rule just indicated. We fully recognize the general rule contended for by the Railroad. In other words, we are in full accord with the rule that when a corporation extends its life by amendment to its charter, such extension is not the formation of a new or different corporation, but is simply a continuation of the old. In the case at bar we hold that the general rule above indicated is not involved, but only the construction of Article 3914 of our civil statutes as to the fee to be charged for such renewal. Simply stated, we hold that in this instance the Railroad has filed a charter within the meaning of such Article. We do not hold that a new or different corporation has been created, in fact we hold to the contrary.

The motion for rehearing filed herein by the Railroad is overruled.

Opinion delivered December 3, 1941.