**EAGLE PASS REALTY COMPANY,**
Appellant,

v.

**Salvador ESPARZA et al., Appellees.**

No. 14999.

Court of Civil Appeals of Texas,
San Antonio.

Sept. 15, 1971.

Rehearing Denied Dec. 29, 1971.

Russell S. Ponder, San Antonio, for appellant.

Hume & Hume, David Hume, Jeremiah Ingels Rhodes, Eagle Pass, for appellee.

CADENA, Justice.

This trespass to try title suit filed by appellant, Eagle Pass Realty Company, against Salvador Esparza and 19 other defendants, involves title to 17 lots in the City of Eagle Pass. After one defendant was severed from the case because of lack of service, a trial without a jury resulted in favor of the other 19 defendants who are appellees here. Appellant concedes that the judgment must be affirmed against four defendants, Alejandro Luna, Hilario Flores Cardenas, Rosantina G. Cardenas and Mario Martinez, who established a valid limitations title.

On August 26, 1910, a charter was filed creating, for a period of ten years, a corporation named Eagle Pass Realty Company. This 1910 corporation will be referred to here as Company No. 1. The incorporators were A. H. Evans, R. F. Vaughan, C. F. Carson, J. R. Murray, W. J. Niggli and Elina L. Dolch. The capital stock of this corporation consisted of 320 shares, each having a par value of $100.00. Prior to August 25, 1920, when the corporate existence of Company No. 1, as limited in its charter, expired, J. R. Murray had terminated his connection with the company; Elina Dolch had sold her 100 shares of stock back to the corporation; and A. H. Evans had died, with his shares passing to his surviving widow, Lula B. Evans.

After August 25, 1920, when the charter of Company No. 1 expired, business was apparently carried on as usual under the name of Eagle Pass Realty Company until July 7, 1922, when a charter was filed incorporating appellant, Eagle Pass Realty Company, for a period of fifty years. The incorporators were the four persons who were active in the affairs of Company No. 1, owning all 220 shares of its outstanding stock, at the time that the charter of Company No. 1 expired in 1920.

For the purposes of this appeal, we assume that the evidence establishes that title to the lots in question vested in Company No. 1 in 1910. There is no conveyance from Company No. 1, whose charter expired in 1920, to appellant, which was incorporated in 1922.

■ Appellant contends that its charter, filed on July 7, 1922, was merely an extension, renewal or revival of the charter of Company No. 1, whose corporate existence ended, under the terms of its charter, on August 25, 1920. Appellant urges that since it is the same legal entity as Company No. 1, no conveyance from Company No. 1 to appellant is required. We disagree.

■ In the absence of a modifying statute, the existence of a corporation cannot endure beyond the term specified in its charter. Anno: 47 ALR 1288, 1297–1300 (1927). We have no quarrel with appellant's statement that when the fact of incorporation is established, the burden of proving the dissolution of the corporation is cast upon the person asserting such dissolution. Here the evidence establishes that Company No. 1 was dissolved, except for limited purposes which will be noted later, almost two years before appellant's corporate existence began. According to statutory provisions in force at all relevant times, Company No. 1 was dissolved when the period of existence designated in its charter expired. Acts, 1907, ch. 166, p. 309; Tex.Rev.Civ.Stat. (1911) Art. 1205; Tex.Rev.Civ.Stat. (1925) Art. 1387. These statutory provisions but embodied the general rule that after the expiration of the period of existence specified in its charter, a corporation is ipso facto dissolved and no longer has any existence at all, either de jure or de facto. 19 C.J.S. Corporations § 1653, pp. 1427–1428.

Until the adoption in 1937 of what was, prior to the adoption of our Business Cor-

poration Act, Article 1315(a), there was no method by which the charter of a corporation, other than that of a railroad, benevolent, charitable or missionary organization, could be extended. This fact is recognized by the 1937 legislation, which recites that an emergency is created by "[t]he fact that there is now no General Law providing for the extension of corporate charters, . . . ." Acts 1937, 45th Leg. p. 368, Sec. 2. See Flowers v. Pecos River Ry. Co., 138 Tex. 18, 156 S.W.2d 260 (1941). There was, therefore, no provision for the extension of the charter of Company No. 1 when it expired in 1920. Nor, except in the case of corporations whose right to do business had been forfeited for nonpayment of the franchise tax, was there any statutory authorization for the revival or reinstatement of a charter.[1]

Under the provisions of Article 1206, Tex.Rev.Civ.Stat. (1911), upon dissolution of a corporation, the directors and managers of the corporation at the time of its dissolution became, in the absence of the appointment of a receiver, trustees of the creditors and stockholders of the defunct corporation, with full power to do all acts necessary to settle the affairs of the corporation, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of dissolution, ". . . and the existence of every corporation may be continued for three years after its dissolution from whatever cause for the purpose of enabling those charged with the duty to settle up its affairs, . . . ."

■ The extension allowed by statute for the winding up of dissolved corporations implies a continuation of their corporate existence in a qualified manner only and within the strictly limited powers and purposes as provided in the statutes. The trustees for dissolution purposes have no power, unless granted by statute to form a new corporation or amend the articles of incorporation of the defunct legal entity. 19 Am.Jur.2d, Corporations, Sec. 1671, p. 1017. "The trustees have no power under these statutes to continue the business with no intention of winding it up, . . . ." 19 C.J.S. Corporations § 1745, p. 1514.

Appellant's reliance on Rayburn v. Guntersville Realty Co., 228 Ala. 662, 154 So. 812 (1934), is misplaced, since there, as the Alabama court pointed out, a statute clothed a corporation with power to renew or extend its existence. Ala. Code (1923) Sec. 7015(14); 154 So. at 815. The same is true of Thomson v. Nygaard, 98 Mont. 529, 41 P.2d 1 (1935).

Mid-West Coal Co. v. Henson, 185 Ark. 746, 48 S.W.2d 1099 (1932), is simply a case of the application of the doctrine of estoppel to prevent shareholders from shielding a corporation against liability for loss of life resulting from a mine explosion. The shareholders, at a meeting held April 23, 1928, voted to surrender the charter of Mama Coal Company. At the same meeting, the stockholders of Mama organized Mid-West Coal Company to take over the assets, and continue the operations, of Mama. After pointing out that the bases for application of the doctrine of estoppel were too numerous to require mentioning, the Arkansas court concluded that the machinations of the stockholders accomplished no more than a change of corporate name.

The cases involving consolidation, merger and reorganization of existing corporations have no application to a situation such as that before us. Similarly inapplicable are cases involving revival of corporations whose charters have been forfeited because of nonpayment of fees, since the resurrection of such corporations is expressly authorized by statute, as in Texas.

We agree with the trial court's conclusion that appellant is not the same legal

---

1. Art. 7.12, Tex.Bus.Corp. Act Ann., V.A. T.S., which permits extension of the period of existence of a corporation with- in three years after expiration of the period of existence fixed in its charter, was not in effect in either 1920 or 1922.

entity as Company No. 1. Even if it be conceded that the trustees, for dissolution purposes, of Company No. 1 had the power to convey the property of such defunct corporation to appellant, cf. Tenison v. Wilson, 151 S.W.2d 327 (Tex.Civ.App.—Dallas 1941, writ dism.), the record discloses no such conveyance. There is no basis for concluding that the title of Company No. 1 to the lots in question passed to appellant.

The judgment of the trial court is affirmed.