

# THE ATTORNEY GENERAL
## OF TEXAS

November 10, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Stan Schlueter
Chairman
Ways and Means Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-978

Re:  Whether Department of Human Services contract for Medicaid purchased health services insurance is subject to the provisions of article 601b, V.T.C.S. (RQ-1566)

Dear Representative Schlueter:

You request an opinion on the bidding process for the Medicaid purchased health services contract. The Texas Department of Human Services has issued a request for proposals for insurance and administration of the Texas Medicaid Purchased Health Services Program, with a bid filing deadline of November 4, 1988. You inform us that the contract will entail expenditure of over one billion dollars per year in state and federal funds.

The Medicaid program is established under title XIX of the Social Security Act. 42 U.S.C. § 1396. It provides for federal funding to assist states in furnishing medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals whose income and resources are insufficient for the cost of necessary medical services. Id. Participating states must designate a single state agency to administer or to supervise the administration of the state plan for medical assistance. 42 U.S.C. § 1396a(a)(5). The Texas Department of Human Services is the state agency responsible for administering the Medicaid program in this state. Hum. Res. Code, §§ 22.001, 22.002, 32.021.

Under the Medicaid legislation, the federal government pays a participating state for part of its expenditures to provide medical services and to administer the program, including the costs of a mechanized claims processing and information retrieval system, defined as a system of software and hardware used to process Medicaid claims and to provide information required by the state and the federal

government for administrative and audit purposes.  42 U.S.C. §§ 1396a(a)(4)(A); 1396b(a);  42 CFR  § 433.111(b).  If  the state's mechanized  claim  processing  and  information  re- trieval system does  not comply  with federal  requirements, the  amount  of  federal  funds  otherwise  due  the  state under the Medicaid  program  will  be  reduced.  42  U.S.C. § 1396b(r); 42 CFR § 433.110(a)(2).

Federal regulations  permit  states  to  contract  with various entities to  process claims, to  pay for or  provide medical services, or to enhance the state's effectiveness in administering the  Medicaid  program.  42  C.F.R.  §§ 434.1; 434.2.  A  state may  contract with  a fiscal  agent,  which processes and pays claims without assuming risk for the cost of providing  medical services.  Id. § 434.2.  A state  is also permitted to contract with a "health insuring organiza- tion," which  pays for  medical services  provided to  reci- pients in exchange for a premium or subscription charge paid by the agency and assumes an underwriting risk.  Id.

The Department  of Human  Services currently  contracts with an insurance company  under a health insuring  arrange- ment.  Tex. Dept.  of Human Services,  Request for  Proposal for Administration  of  a  Portion  of  the  Texas  Medicaid Program to be Implemented  Sept. 1, 1989, II-3  [hereinafter RFP].  The  contract  provides  for  reimbursement  to  the contractor for some medical  services, while the  contractor assumes financial responsibility for the provision of  other medical services, known as Purchased Health Services.  RFP, II-3.  Electronic  data  processing  services  are  divided between the department and the contractor. RFP, II-7.  The department has  requested  proposals  for  similar  services under a contract to be implemented September 1, 1989.  RFP, III-3; III-4; III(D)-1.  Your  questions relate to the  bid- ding process  for the  contract proposed  to be  implemented September 1, 1989.

Your first question is as follows:

> Is  the  bidding  process  for  the  Medicaid
> purchased health services insurance  contract
> subject to  the provisions  of article  601b,
> V.T.C.S.

Article  601b,  V.T.C.S.,  establishes  the  State Purchasing and General  Services Commission.  Article 3  of that  statute  provides  as  follows  for  the  commission's purchasing authority:

> (a)  The commission shall purchase, lease, rent, or otherwise acquire <u>all</u> supplies, materials, services, and equipment <u>for all state agencies</u> . . . .
>
> . . . .
>
> (c)  'Services,' as used in this article, means the furnishing of skilled or unskilled labor or professional work but does not include:
>
> (1)  professional services covered by the Professional Services Procurement Act (Article 664-4 . . . [V.T.C.S.]);
>
> (2)  services of an employee of a state agency;
>
> (3)  consulting services or services of a private consultant as defined by Chapter 454, Acts of the 65th Legislature, Regular Session, 1977 (Article 6252-11c . . . [V.T.C.S.]); or
>
> (4)  services of public utilities. (Emphasis added.)

V.T.C.S. art. 601b, § 3.01.

A "state agency" is defined to include "any department, commission, board, office, or other agency in the executive branch of state government created by the constitution or a statute of this state . . . " <u>Id.</u> § 1.02(2)(A). The Department of Human Services, established by title 2 of the Human Resources Code, is a state agency within this definition. Hum. Res. Code §§ 11.001; 21.001. As a state agency, it is subject to the provisions of article 601b, V.T.C.S. relating to purchasing unless excepted by the legislature. <u>Compare</u> Attorney General Opinion JM-445 (1986) <u>with</u> Attorney General Opinion MW-177 (1980). We will consider whether any provision of law excepts the contract from article 601b, V.T.C.S.

Section 22.002(f) of the Human Resources Code grants the department authority to enter into contracts. This provision states as follows:

> (f)  The department may enter into agreements with federal, state, or other public or

> private agencies or individuals to accomplish
> the purposes of the programs authorized in
> Subsection (c) of this section. The agree-
> ments or contracts between the department and
> other state agencies are not subject to the
> Interagency Cooperation Act . . . .

Hum. Res. Code § 22.002(f). The subsection (c) referred to provides that

> [t]he department may establish and maintain
> programs of assistance and services autho-
> rized by federal law and designed to help
> needy families and individuals attain and
> retain the capability of independence and
> self-care. Notwithstanding any other pro-
> vision of law, the department may extend the
> scope of its programs to the extent necessary
> to ensure that federal matching funds are
> available, if the department determines that
> the extension of scope is feasible and within
> the limits of appropriated funds.

Id. § 22.002(c).

These provisions were adopted in 1969 by a bill which amended former article 695c, V.T.C.S., now recodified as various provisions of Title II, Human Resources Code. Acts 1969, 61st Leg., ch. 845, § 1, at 2527; see Acts 1979, 66th Leg., ch. 842, art. I (adopting Texas Human Resources Code).

In construing statutes, a court must look to the entire act, including the caption, body, and emergency clause, to determine the legislative intent. Trawalter v. Schaefer, 179 S.W. 2d 765 (Tex. 1944). See also Southwestern Bell Tel. Co. v. Houston Indep. School Dist., 397 S.W.2d 419 (Tex. 1965). The title of the 1969 enactment reads in part:

> An Act . . . authorizing the State Department
> of Public Welfare to extend by rule and
> regulation the full range of programs and
> scope of services provided for under the
> Federal laws as they now read or as they may
> hereafter be amended and any rules or
> regulations promulgated pursuant thereto;
> authorizing the department to enter into
> agreements to implement these programs and
> services . . . . (Emphasis added.)

Acts 1969, 61st Leg., ch. 845, at 2525.

The emergency clause of the 1969 bill provides in part:

> Sec. 10. The fact that under Federal Law the Department is required to extend the welfare programs and to provide services to and on behalf of the needy people served by the Department, and <u>such services can, in many instances, be best provided through contracts and agreements with individuals or with other public or private agencies</u> . . . and the crowded condition of the calendar create an emergency . . . . (Emphasis added.)

<u>Id.</u> at 2533.

As the title and emergency clause show, the purpose of the 1969 amendments was to enable the state to participate fully in federal welfare programs and the legislature granted the department broad rule-making authority to achieve that purpose. The provision now codified as section 22.002(f) was directed at achieving the same legislative purpose. It granted the department expansive authority to contract with individuals and public or private agencies to implement welfare programs and exempted such contracts with other state agencies from the Interagency Cooperation Act, article 4413(32), V.T.C.S. Interagency contracts entered into under that act were not valid unless approved in advance by the Board of Control, now the State General Services and Purchasing Commission.

In 1969 the Board of Control was also the agency responsible for purchasing supplies, materials, services, and equipment for the state of Texas under the State Purchasing Act of 1957. Acts 1957, 55th Leg., ch. 304 (formerly codified as article 664-3, V.T.C.S., repealed by Acts 1979, 66th Leg., ch. 773, § 99.05). Under the State Purchasing Act of 1957, the Board of Control had authority to contract only for "services of the type heretofore contracted for" by the board and to act only on behalf of "departments and agencies of the type heretofore required to make purchases through the Board . . . ." Thus, there may have been no need for the predecessor of section 22.002(f) to exempt the contracts it authorized from the State Purchasing Act of 1957.

Article 601b, V.T.C.S., was adopted in 1979 to create the State Purchasing and General Services Commission, organize the laws formerly relating to the Board of Control into a State Purchasing and General Services Act, and abolish the State Board of Control. Acts 1979, 66th Leg.,

ch. 773, at 1908; Bill Analysis, Tex. H.B. 1673, 66th Leg. (1979) (prepared for House Committee on State Affairs). The bill as introduced incorporated the State Purchasing Act of 1957 and other purchasing laws but did not provide that the commission "shall purchase, lease, rent, or otherwise acquire all supplies, materials, services, and equipment for all state agencies . . . ." See Bill Analysis, Tex. H.B. 1673, supra; Bill Analysis, Tex. H.B. 1673 & C.S.H.B. 1673, 66th Leg. (1979) (prepared for Senate). The bill was amended on the Senate floor to add the language adopted as section 3.01, article 601b, V.T.C.S. S.J. of Tex. 66th Leg., Reg. Sess. 1795 (1979). We have no indication that the legislature intended this provision to limit the department's broad authority to contract with private entities in carrying out federal welfare programs.

While section 22.002(f) of the Human Resources Code applies to a broad range of federal programs, other provisions of the Code are particularly relevant to the department's contract for Medicaid purchased health services. Chapter 32 of the Code authorizes state participation in federal programs of medical assistance. Hum. Res. Code § 32.001. The chapter is to be liberally construed in relation to applicable federal laws and regulations to make health care available to all persons who need the care and are unable to pay for it. Hum. Res. Code § 32.002(a). The Department of Human Services is the state agency designated to administer the medical assistance program provided in chapter 32 and is authorized to establish methods of administration and adopt necessary rules to operate the program. Id. § 32.021(a), (c).

Section 32.029 of the code provides in part:

> (a) The department may prescribe a method of payment for medical assistance claims by establishing a direct vendor payment program that is administered by the department, or by an insurance plan, a hospital or medical service plan, or any other health service plan authorized to do business in the state, or by a combination of those plans.

> (b) The department may use any fiscal intermediary, method of payment, or combination of methods it finds most satisfactory and economical. The department may make whatever changes it finds necessary from time to time to administer the program in an economical and equitable manner consistent

> with simplicity of administration and the best interest of the recipients of medical assistance.
>
> (c) If the department elects to make direct vendor payments, the payments shall be made by vouchers and warrants drawn by the comptroller on the proper account of the Texas Department of Human Services fund. The department shall furnish the comptroller with a list of those vendors entitled to payments and the amounts to which each is entitled. When the warrants are drawn, they must be delivered to the commissioner, who shall supervise the delivery to vendors. (Emphasis added.)

Hum. Res. Code § 32.029.

This provision gives the department broad authority to use various methods of administering the Medicaid program. Several of these methods necessarily require the department to enter into contracts. The means of administering Medicaid set out in subsections (b) and (c) of section 32.029 overlap with the definition of "contractor" in the part of the Code of Federal Regulations which sets out requirements for contracts in connection with the Medicaid program. 42 CFR Pt. 434. "Contractor"

> means any of the following entities that contract with the Medicaid agency under a State plan and in return for a payment, to process claims, to pay for or provide medical services, or to enhance the agency's capability for effective administration of the program:
>
> (a) A fiscal agent.
> (b) A health care project grant center.
> (c) A private nonmedical institution.
> (d) A health insuring organization.
> (e) A health maintenance organization.
> (f) A prepaid health plan.
> (g) A clinical laboratory.
> (h) A professional management service or consultant firm.

42 CFR § 434.2.

Section 32.029 authorizes the state to enter into at least some of the kinds of contracts contemplated by federal law. Such contracts cannot easily be described as contracts for "supplies, materials, services, and equipment," within section 3.01 of article 601b, V.T.C.S. Contracts to implement Medicaid may involve the provision of professional services excepted from section 3.01 of article 601b, V.T.C.S., or the assumption of risk as an insurer, and not merely the provision of "supplies, materials, services, and equipment."

It would not be inconsistent with the legislature's treatment of other insurance contracts to regard the department's contract with an insurance company under section 32.029 as excepted from article 601b, V.T.C.S. Contracts for health insurance coverage for state employees are governed by Insurance Code provisions, and not by the State Purchasing and General Services Act. See Ins. Code art. 3.50-2 (Texas Employees Uniform Group Insurance Benefits Act); art. 3.50-3 (Texas State College and University Employees Uniform Insurance Benefits Act). See also V.T.C.S. art. 6252-19a; Attorney General Opinion JM-889 (1988). Attorney General Opinion MW-494 (1982) determined that contracts for the purchase of insurance were not contracts for personal or professional services within an exemption to the competitive bidding statute applicable to counties. Attorney General Opinion MW-342 (1981) held that an insurance contract was not "personal property" within the competitive bidding requirement applicable to school districts. See Lynd v. Heffernan, 146 N.Y.S.2d 113 (N.Y. App. Div. 1955) (charter provision requiring competitive bidding on all contracts over $1,000 not applicable to insurance policy). At least some of the contracts authorized by section 32.029 of the Human Resources Code are not within the purchasing authority accorded the State Purchasing and General Services Commission by section 3.01 of article 601b, V.T.C.S.

Subsection (c) of section 32.029, which establishes a procedure for making direct vendor payments, is moreover inconsistent with the provisions on payment for state agency purchases in article 601b, V.T.C.S. Sections 3.15 and 3.16 of article 601b, V.T.C.S., require the State Purchasing and General Services Commission to approve the invoice and purchase voucher before the comptroller may approve them for payment and draw his warrant.

There are thus significant inconsistencies between section 32.029 of the Human Resources Code and article 3.01 of the State Purchasing and General Services Act. Moreover,

both section 22.002(f) and section 32.029 of the Human Resources Code are parts of comprehensive grants of power to the Department of Human Services to enable it to implement federal benefit programs. Federal law expressly requires the state to designate a single state agency to administer or supervise the administration of the Medicaid program. 42 U.S.C. § 1396a(a)(5). A federal regulation implementing this requirement provides as follows:

> In order for an agency to qualify as the Medicaid agency--
>
> . . . .
>
> (2) The authority of the agency must not be impaired if any of its rules, regulations, or decisions are subject to review, clearance, or similar action by other offices or agencies of the State.

42 C.F.R. § 431.10(e). If the Purchasing Commission had authority to review the department's purchasing decisions that implement the Medicaid program and to refuse payment for its purchases, a question as to the state's compliance with the above regulation would arise.

In summary, the legislature has granted the Department of Human Services comprehensive authority to administer federal benefit programs, and in particular, the Medicaid program. That authority includes statutory authority to enter into contracts with private entities to implement those programs, authority which is inconsistent with an interpretation of article 601b, V.T.C.S., that would subject the Medicaid purchased health services contract to its provisions. In our opinion, sections 22.002(f) and 32.029 of the Human Resources Code are provisions of special laws relating to the state's participation in federal benefit programs. The enactment of article 601b, V.T.C.S., a general law which governs purchasing for state agencies, does not repeal these special law contract provisions. See Flowers v. Pecos River R. Co., 156 S.W.2d 260 (Tex. 1941). They are construed as exceptions to the general law, based on the presumption that a specific statute evidences the intention of the legislature more clearly that a general one. Townsend v. Terrell, 16 S.W.2d 1063 (1929). In this case, the legislature has made its intent very clear that it wishes the state to receive full benefit from the federal programs administered by the Department of Human Services and has granted the department specific contract authority to help achieve that purpose. We do not believe that the

legislature intended article 601b, V.T.C.S., to limit the specific contractual powers it conferred on the department. Accordingly, we conclude that the Medicaid purchased health services insurance contract is not subject to the provisions of article 601b, V.T.C.S. To the extent that Attorney General Opinion MW-254 (1980) appears to imply the contrary, that implication is surplusage and is expressly repudiated.

In view of our answer to your first question, we need not answer your second and third questions.

### S U M M A R Y

The Medicaid purchased health services insurance contract which the Department of Human Services proposes to enter into is not subject to article 601b, V.T.C.S., the State Purchasing and General Services Commission Act.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General